Bennie CULLENS, James Gonder, Larry Cooper, Plaintiffs–Appellants,

v.

**GEORGIA DEPARTMENT OF TRANSPORTATION, et al.,**
Defendants–Appellees.

No. 93–8570.

United States Court of Appeals,
Eleventh Circuit.

Aug. 25, 1994.

John R. Myer, Robert H. Stroup, Atlanta, GA, for appellants.

Paula Bruner, E.E.O.C., Washington, DC, for amicus curiae E.E.O.C.

John A. Draughon, Michelle W. Johnson, Sell and Melton, Macon, GA, for appellees.

Before EDMONDSON, Circuit Judge, GODBOLD and JOHNSON, Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

This is an attorney's fee appeal in an employment discrimination case. Plaintiffs prevailed on some of their individual claims and were awarded fees for work on those claims, but they were denied class action status and denied fees relating to class claims. We affirm the decision awarding fees based on the individual claims but vacate the award and remand for reconsideration, under proper standards, of the amount of that award. We affirm the denial of fees for class action claims.

## I.  Facts

In April 1974 the Equal Employment Opportunity Commission charged ten or more Georgia state agencies, including the Georgia Department of Transportation, with discrimination in employment practices. The official investigation went on until 1975. EEOC issued a determination of discrimination in January 1981. In September 1981 EEOC referred the matter to the Department of Justice.

The present suit was filed in the Middle District of Georgia in April 1981 by private plaintiffs against the Department of Transportation ("DOT"), its Commissioner, Thomas D. Moreland, the Georgia State Merit System of Personnel Administration, its Commissioner, Charles E. Storm, and the State of Georgia. Named plaintiffs were Bennie Cullens, James Gonder, and Larry Cooper, Afro–American employees of DOT. They alleged racial discrimination in hiring, promotions, and job assignments, against them individually and against a class comprised of Afro–American employees of DOT and rejected Afro–American applicants for employment with DOT, all in violation of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983.

A flurry of briefs and motions ensued on the class action claims. Defendants sought to have them dismissed. In October 1981 plaintiffs moved to have the class certified, while defendants opposed. In February 1982 plaintiffs moved to sever the class claims, which defendants opposed. Sparring in briefs over class certification was still going on in April 1985.

From 1982 to 1985 Justice continued its investigation and narrowed it to four agencies including DOT. It gathered substantial information. It received statistical data and other evidentiary material from counsel for plaintiffs. Counsel for plaintiffs negotiated with DOT concerning settlement of class issues asserted in the present case.

Justice found probable cause to believe that DOT had engaged in a policy or practice of discrimination against blacks and women. It then engaged in negotiations with DOT for a consent settlement to dispose of the EEOC charges. Under the general provisions of the proposed agreement the defendants to the Justice suit and their officials and agents were enjoined and restrained from engaging in discriminatory employment practices. Plaintiffs submitted to the Attorney General of Georgia sweeping proposals of their own that were not covered in the proposed DOT/Justice settlement and that they contended should be included. It appeared that the proposed consent decree would not be modified to accommodate plaintiffs' desires.

Justice and DOT signed the agreement, which included relief on claims of class-based discrimination that fell within the class claims alleged in plaintiffs' complaint. The agreement was implemented in a suit filed in August 1984 by the Justice Department in

N.D.Ga. against the State of Georgia, DOT, and the Georgia State Merit System. Justice moved to approve the agreement. Plaintiffs moved to intervene and objected to approval. Later, they moved to have part of the agreement approved and moved unsuccessfully to have the case transferred to the Middle District of Georgia where the instant case was pending.

By April 1985 the 11th Circuit had entered an order that assigned to handle the present case the judge handling the Justice case. In that month the judge denied the motion of plaintiffs to intervene in the Justice case. Two months later he approved the consent agreement and made it the order of the court. In August 1985 he denied class certification to plaintiffs in the present case because the proposed class did not meet the commonality and typicality requirements of Fed.R.Civ.P. 23(a). The plaintiffs then went forward with their individual claims.

After trial the only claims surviving were: (1) a claim by Gonder that he should have been promoted to Skilled Laborer on or after May 1, 1980; (2) a claim by Cooper that he improperly received two written reprimands and one verbal reprimand for attendance problems; (3) a claim by Cullens that he should have been promoted to Laborer II on or after April 1, 1978, to Equipment Operator I on or after January 1, 1979, and/or to Skilled Laborer on or after January 1, 1979; and (4) a claim that Cullens and Gonder were denied training. Other claims had been dismissed before or during trial.[1]

Of the claims presented for decision after trial Gonder prevailed on his claim of discrimination in promotion and was awarded $5,384.93 in back pay and a salary step increase worth $900 annually that became effective April 1, 1988. Cullens partially prevailed on his promotion claim and was awarded $1,922.46 in back pay. On Cooper's claim of disparate discipline the court found for defendants.

Plaintiffs filed a motion for attorney's fees for time expended on the individual claims and on class claims. The district court denied the fee request for time expended on the class issues and ordered resubmission of the fee request for the individual claims, by an order filed March 4, 1991. Upon resubmission of the request for the individual claims, in an order filed April 2, 1993, 827 F.Supp. 756, the district court granted attorney's fees in the amount of $36,471 for time spent in litigation of the individual claims pursuant to 42 U.S.C. § 2000e–5(k). Plaintiffs appeal from both orders.

■ We turn first to the order granting the attorneys' fees for the individual claims. We review the district court's award of attorney's fee for an abuse of discretion. *Resolution Trust Corp. v. Town of Highland Beach*, 18 F.3d 1536, 1554 (11th Cir.1994) (citing *Popham v. City of Kennesaw*, 820 F.2d 1570, 1581 (11th Cir.1987)).

II. Use of a multiplier of damages in calculating a fee

42 U.S.C. § 2000e–5(k) provides in relevant part:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee ... as a part of the costs. ...

Plaintiffs requested $116,375 in attorney's fees, $1,365 in paralegal fees, and $5,703.04 for costs. The district court awarded $36,471 in attorney's fees, $1,365 in paralegal fees, and $2,089.33 for costs.

The controlling case on the proper standard for setting a fee award where the plaintiff has achieved only limited success is *Hensley v. Eckerhart*, 461 U.S. 424, 431, 103 S.Ct. 1933, 1938, 76 L.Ed.2d 40 (1983). In that case the Supreme Court "clarif[ied] the proper relationship of the results obtained to an award of attorney's fees." *Id.* at 432, 103

---

1. These were: (1) plaintiffs' Title VII claims based upon disparate impact, dismissed mid-trial; (2) plaintiffs' claim against Thomas Moreland in his individual capacity, directed verdict at the close of plaintiffs' evidence; (3) a § 1981 claim based on respondeat superior, dismissed during trial; (4) Cooper's claim regarding withholding of a pay increase, dismissed at pre-trial conference in March 1981; (5) plaintiffs' claims against Charles Storm, in his official capacity as Commissioner of the Merit System, dismissed at pre-trial conference.

S.Ct. at 1939 (footnote omitted). It explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. This lodestar "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.; see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986). "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940 (footnote omitted). "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. at 1943; *see also Norman v. Housing Auth. of City of Montgomery,* 836 F.2d 1292, 1302 (11th Cir. 1988).

The district court arrived at a lodestar of $57,307 [2] by computing the reasonable hourly rate as $100 per hour and the reasonable number of hours spent on litigation of the individual claims as 573.045. The court found the results obtained to be small. That finding is not erroneous. It noted that "the unsuccessful individual claims clearly outnumbered the successful ones and the monetary award [was small] in absolute terms." It departed downward from its lodestar figure of $57,307 to award a fee of $36,471. It arrived at this figure by calculating the present value of plaintiffs' recovery as $12,157 and trebling this figure to reach the fee award of $36,471. The court said:

A trebling of the small recovery would serve as a good measure of a fee that is reasonable under the circumstances in cases where the lodestar calculated under *Hensley* and progeny have tended to produce excessive amounts. If prospective equitable relief were obtained, a higher multiple might be appropriate. This approach proportions fees to results obtained, excludes compensation for issues raised unsuccessfully, and provides a fair incentive for lawyers to take even small cases, while bringing some economic reality to the area. The approach, also assures an adequate disincentive to violating the law even in small ways, while putting some rational limits on the transaction costs.

April order at 18–19 (footnote omitted). It stated that the amount granted was reasonable under all the circumstances of this case. "[T]he case was grand in conception and ... was continued in an expansive and severely over-lawyered fashion until its conclusion. The traditional means of determining attorneys' fees is inadequate for the task in this case of setting a reasonable fee...." April order at 19.

■ We hold that the district court's use of a multiplier was error. We recognize the discretion of the district court in awarding fees. "'A district court is expressly empowered to exercise discretion in determining whether an award is to be made and if so its

---

2. At one point in the April order the district court refers to the lodestar figure as $57,262. April order at 24. At another point it refers to it as $57,307. April order at 15. Our calculation differs slightly. The court computed the reasonable hours spent on litigation as follows:

| | Hours Spent |
|---|---|
| Defense Counsel Contacts | 23.70 |
| Document Inspection, Review | 33.97 |
| Deposition Preparation, Taking, Review | 43.95 |
| Court Conferences | 22.60 |
| Miscellaneous Legal Research | 14.00 |
| Miscellaneous (atty. rate) | 8.20 |
| (paralegal rate) | .50 |
| Investigation Other than Documentary | .90 |
| Contacts with Plaintiffs | 53.47 |
| Conferences with Paralegal | .40 |
| Legal Research, Drafting of Court Pleadings, Filings | 181.955 |
| Trial Preparation | 93.12 |
| Trial | 44.80 |
| Post–Trial (other than fee petition) | 30.10 |
| Fee Petition | 21.00 |
| Total Hours | 572.665 |

The district court determined that .5 hours, listed as Miscellaneous, spent on calls to the clerk, should be multiplied by the paralegal rate of $35 per hour, while the remaining 572.165 should be multiplied at the attorney rate of $100 per hour. Thus, our calculation results in a lodestar figure of $57,234. The district court can revisit these calculations on remand.

reasonableness.' The district court's calculation is thus anything but an arithmetical exercise." *Evans v. Jeff D.*, 475 U.S. 717, 736 n. 26, 106 S.Ct. 1531, 1543 n. 26, 89 L.Ed.2d 747 (1986) (citations omitted); *see also Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941: "We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." We do not hold or imply that the amount calculated by the district court is itself wrong. What we do hold is that the method used in computing an amount was wrong and that an amount must be set that is calculated under proper standards.

The Supreme Court has rejected proportionality of damages as a basis for a fee award. In *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), plaintiffs were awarded $33,350 in damages, where the jury found violations of 42 U.S.C. § 1983, instances of false arrest and imprisonment, and neglect. They sought attorney's fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 [3], and were awarded $245,456.25 by the district court. The Supreme Court affirmed the judgment of the Court of Appeals and upheld the fee award. It rejected the petitioners' argument that *Hensley*'s lodestar approach was inappropriate in civil rights cases where a plaintiff recovers only monetary damages. Petitioners reasoned that an attorney's fee should be proportionate to the amount of damages a plaintiff recovers because the lodestar may result in fees that are unreasonable because they exceed the amount of damages recovered.

The Court said,

The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. [citation omitted.] It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.

*Id.* at 574, 106 S.Ct. at 2694. The Court explained that "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. And, Congress has determined that the 'public as a whole has an interest in the vindication of the rights conferred by statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff.'" *Id.* (citations omitted). "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Id.* at 575, 106 S.Ct. at 2694. "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988." *Id.* at 578, 106 S.Ct. at 2696. The Court concluded that "[i]n the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under § 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." *Id.* at 581, 106 S.Ct. at 2697 (footnote omitted).

Summarizing, we recognize that the district court has wide discretion. We know that the amount of damages is relevant. We know that a court may not employ a cash register approach in which setting a fee is merely an arithmetical function. Our task then, recognizing these factors, is to determine whether the district court's use of a multiplier was incorrect. We conclude that it was. We do not read the order (as plaintiffs would have us do) as a purely arithmetical exercise, in cash register fashion, of a multiplier. Nor can we read it (as defendants

---

**3.** 42 U.S.C. § 1988 provides in relevant part: In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**1494**

would like) as an award of an appropriate amount in which the multiplier was not a factor, or, if it was, use of it was harmless error.

The district court did not pull the three-times-damages multiplier out of the air. The court spelled out its intellectual process. It concluded that it was awarding a fee "reasonable under the circumstances" where the lodestar tended to produce an excessive result. It recognized that a higher multiple might be appropriate if prospective equitable relief were obtained. It recognized the need for an incentive for lawyers to take small cases, for disincentives to violate the law even in small ways, and for a need to put limits on transactional costs. But we cannot exclude the possibility that, although the use of the multiplier was explained and justified, the multiplier itself became either the ultimate standard or a substantial component of the court's calculation. The risk is too great that a multiple-of-damages approach will subsume, or override, or erode other relevant considerations, or place undue tensions upon them. Use of the multiplier as a sole or dominant criterion is inconsistent with the Supreme Court's rejection of proportionality of damages as a basis for a fee award. It tends to diminish the public benefit, to make the fee depend upon substantiality of monetary relief, and to reduce the inquiry to the arithmetical exercise rejected by the Supreme Court in *Evans v. Jeff D.*, 475 U.S. at 736, 106 S.Ct. at 1542. The district court must revisit the amount of the fee award, stripped of proportionality of damages to award.

### III. Other challenges

■ Plaintiffs challenge the fee award on other grounds. They contend the district court erred in using Macon, Georgia as the relevant market for the hourly rate to be used in the computation of the lodestar figure. The rate of attorney's fees is that of the place where the case is filed. *See Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983). The case, although transferred in 1985 to a judge of the Northern District, based in Atlanta, was initially filed in Macon. Plaintiffs assert Atlanta was the appropriate market because

there were no lawyers in Macon with the expertise to handle their case. The district court did not err in focusing on whether there were attorneys in Macon with the ability to handle plaintiffs' individual claims rather than the proposed class action. Nor did it err in finding that plaintiffs did not meet their burden of showing a lack of Macon lawyers willing or able to handle their individual claims. The district court did not err in applying a $100 hourly rate, at the lowest end of the Macon lawyer's rates, which it determined to be $100 to $150.

■ The court denied telephone and travel expenses on the ground that 28 U.S.C. § 1920 does not provide for their recovery. The government acknowledges that this was error, and the court should revisit this point. Long distance telephone charges and travel expenses are appropriate expenses under § 1920 to the extent they are reasonable. *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir.1983). The court did not err in disallowing the photocopying costs. Plaintiffs did not present required evidence regarding the documents copied including their use or intended use. *See Helms v. Wal–Mart Stores, Inc.*, 808 F.Supp. 1568, 1570 (N.D.Ga.1992).

Plaintiffs' remaining assertions of error by the district court in awarding fees for litigation of the individual claims are meritless and do not warrant discussion.

### IV. Fees for the class action claims

■ Plaintiffs' complaint, filed in 1981, alleged class action claims, but certification was denied because of lack of commonality and typicality. It is not contended that this denial was erroneous.

In *Farrar v. Hobby*, —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court said:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.

*Id.* at ——, 113 S.Ct. at 573 (citations omitted). The courts have divided on whether

this language applies to all cases, or to only cases in which there is minimal relief, or even is only dictum.[4] The Eleventh Circuit has taken no position in this matter, and this is not an appropriate case in which to address it. We hold that, even if the catalyst theory has survived *Farrar*, the district court did not err in holding that plaintiffs were not a catalyst in bringing about the consent settlement between Justice and DOT, and that they were not such "active participants" in Justice's governmental efforts to protect the public interests that they were "prevailing parties." As we have pointed out, plaintiffs objected to the consent agreement and sought to have the district court refuse to approve it, while at the same time they were pursuing class certification in the instant case, which ultimately was denied for lack of commonality and typicality.

AFFIRMED in part, VACATED and REMANDED in part.

**4.** Several circuits have recognized the continuing vitality of the catalyst theory for finding "prevailing party" status since *Farrar. See Baumgartner v. Harrisburg Hous. Auth.*, 21 F.3d 541 (3d Cir. 1994); *American Council of the Blind, Inc. v. Romer*, 992 F.2d 249 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993); *Craig v. Gregg County*, 988 F.2d 18 (5th Cir. 1993); *Paris v. U.S. Dep't of Hous. & Urban Dev.*, 988 F.2d 236 (1st Cir.1993). For an explanation of the position that the catalyst theory is no longer available after *Farrar see S–1 and S–2 v. State Bd. of Educ. of North Carolina,* 21 F.3d 49 (4th Cir.1994) (en banc) *rev'g,* 6 F.3d 160 (4th Cir.1993) (adopting as its own opinion, by a 6–5 vote, the previous dissent panel's opinion in *S–1,* 6 F.3d at 168–172); *see also* dissenting panel's opinion, 21 F.3d at 51, presenting the competing view, adopting as its own the previous majority opinion.