Coy B. WILKES, Plaintiff,

v.

POLK COUNTY, GEORGIA and
Jack Kirkpatrick, former
sheriff, Defendants.

No. Civil Action 4:93–cv–277–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Jan. 28, 1997.

---

## ORDER

HAROLD L. MURPHY, District Judge.

This civil rights case is before the Court on Plaintiff's Motion for Award of Attorney's Fees [52]. The case presents the following issue: whether, when determining an award of attorney's fees pursuant to 42 U.S.C.A. § 1988, the reasonable hourly rates for Plaintiff's attorneys should be based on prevailing market rates in Rome, Georgia, the city where Plaintiff filed this case, or in Atlanta, Georgia, the city where Plaintiff's attorneys' offices are located.[1] The Court concludes

---

1. The cities of Rome and Atlanta both are located in the Northern District of Georgia. Atlanta is in the Atlanta Division of the Northern District of Georgia and Rome is in the Rome Division. Rome is approximately sixty miles northwest of Atlanta.

that, given the facts of this case, the reasonable hourly rates for Plaintiff's attorneys should be based on prevailing rates in the Rome legal community.

## I. Background

In January 1991, Defendant Kirkpatrick, then sheriff of Polk County, Georgia, hired Plaintiff as administrator of the Polk County Jail. In July 1992, Defendant Kirkpatrick lost in the Democratic primary election and the two remaining candidates, Mr. Broome and Mr. Bowman, faced each other in a runoff election. Prior to the runoff, Defendant Kirkpatrick announced he was supporting Mr. Bowman's candidacy. Defendant Kirkpatrick warned Plaintiff and other employees that he "better not catch anybody voting for [Mr. Broome] or they might be looking for another job." (Plaintiff's Dep. at 85.)

In August 1992, while Plaintiff and Defendant Kirkpatrick were discussing the upcoming runoff, Plaintiff casually mentioned that Plaintiff intended to vote for Mr. Broome. (*Id.* at 101, 102). Defendant Kirkpatrick suddenly "gave [Plaintiff] a dirty look" and "didn't say a word" to Plaintiff from that point forward. (*Id.* at 103.) On September 3, 1992, approximately one month after Plaintiff informed Defendant Kirkpatrick that Plaintiff intended to vote for Mr. Broome, Defendant Kirkpatrick terminated Plaintiff's employment without cause.

On September 27, 1993, Plaintiff filed this lawsuit, alleging Defendant Kirkpatrick terminated Plaintiff because of Plaintiff's political patronage, thus violating Plaintiff's First Amendment rights. The parties conducted significant discovery and on January 4, 1996, Defendants filed a Motion for Summary Judgment, asserting five separate arguments. On January 24, 1996, Plaintiff filed a 31–page Response to Defendants' Motion for Summary Judgment. On May 9, 1996, the Court denied Defendants' Motion for Sum-

mary Judgment. Soon thereafter, the parties began to discuss the possibility of a settlement.

On June 21, 1996, Plaintiff accepted an Offer of Judgment from Defendants. The settlement agreement did not address attorney's fees and the parties disputed whether Plaintiff had the right to recover attorney's fees in addition to the value of the settlement. On July 12, 1996, after briefing and oral arguments from the parties, the Court held that Plaintiff was entitled to recover reasonable attorney's fees in addition to the value of the settlement.

On August 30, 1996, Plaintiff filed a Motion for Award of Attorney's Fees, seeking $24,571.50. Attached billing summaries indicate this sum represents (1) 120.9 hours of work, at an hourly rate of $135, by the associate who prosecuted Plaintiff's case; and (2) 33 hours of work, at an hourly rate of $250, by the senior partner who guided the associate.

On October 4, 1996, Defendants filed their Response to Plaintiff's Motion for Award of Attorney's Fees, arguing: (A) the hourly rates suggested by Plaintiff's attorneys incorrectly reflect prevailing market rates in Atlanta, Georgia, as opposed to Rome, Georgia; and (B) Plaintiff's senior attorney billed unnecessary and duplicative hours.

## II. Discussion

■ The Court, in its discretion, may allow "the prevailing party"[2] in a civil rights case to recover "a reasonable attorney's fee" as part of his costs. 42 U.S.C.A. § 1988. In the present case, it is undisputed that Plaintiff is a prevailing party. The only disputed issue is the amount of attorney's fees to which Plaintiff is entitled.

■ "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stier-*

---

**2.** "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (citations omitted). In short, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Assn. v. Garland Indep. School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989).

*heim*, 10 F.3d 776, 781 (11th Cir.1994). "This 'lodestar' may then be adjusted for the results obtained." *Id.* Although a district court has wide discretion in determining an award of attorney's fees, "the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* (internal quotations and citation omitted).

## A. Reasonable Hourly Rates

■■■ "A reasonable hourly rate is the prevailing market rate in the *relevant legal community* for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988) (emphasis added). "The party seeking attorney's fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.' "[3] *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299.) "A court, however, 'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment.' " *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

■■■ Generally, the "relevant legal community," for purposes of determining prevailing market rates, "is that of the place where the case is filed." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir.1994). The Court, however, may "consider a different legal market if it appears unlikely that there would be any attorneys in the local market who would be willing to take the case and who would possess sufficient expertise in the area of law involved." *Gay Lesbian Bi-*

*sexual Alliance v. Sessions*, 930 F.Supp. 1492, 1495 (M.D.Ala.1996); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983) (cited with approval in *Cullens*, 29 F.3d at 1494).

■■■ Plaintiff asserts that, because his attorneys are from Atlanta, the Atlanta legal community should be used to establish the prevailing hourly rates in this case. Plaintiff's attorneys argue that, while they are not "any better a lawyer than one in Rome [or] Cartersville," they, as Atlanta lawyers, "have greater financial obligations in rents, salaries, parking, and a number of other expenses." (October 16, 1996, Aff. of James Lee Ford, Sr. at ¶ 3). Defendants respond by arguing that, because Plaintiff filed this case in Rome, the northwest Georgia legal community should be used to establish prevailing hourly rates.[4] The Court believes Defendants have the better argument.

Plaintiff does not allege that attorneys in the Rome/northwest Georgia legal community were unwilling to take his case. Furthermore, Plaintiff does not allege that his case involves a complex subject matter, requiring special expertise that is unavailable in the northwest Georgia legal community. To the contrary, Plaintiff has introduced evidence showing "[t]he case was not particularly complicated or complex."[5] (September 10, 1996, Aff. of James Lee Ford, Sr. at ¶ 7.) The Court therefore concludes that the "relevant legal community," for purposes of determining prevailing market rates in this case, is the Rome Division of the Northern District of Georgia, "the place where the case [was] filed." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir.1994). Given this law, the Court now must use evidence of hourly rates actually billed by attorneys in

---

3. Satisfactory evidence requires " 'more than the affidavit of the attorney performing the work.' " *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). Additionally, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* Opinion evidence, however, should include "testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id.*

4. Rome is located in northwest Georgia. The northwest Georgia legal community generally is associated with the Rome Division of the Northern District of Georgia.

5. Plaintiff also introduced evidence indicating that his Atlanta attorneys are no more talented than attorneys in the northwest Georgia legal community. (October 16, 1996, Aff. of James Lee Ford, Sr. at ¶ 3.)

the Rome Division of the Northern District of Georgia as well as the Court's "own knowledge and experience concerning reasonable and proper fees," to determine the reasonable hourly rates for Plaintiff's attorneys. *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

■ As for Mr. Moorman, the associate who prosecuted Plaintiff's case, the Court believes an hourly rate of $110 is reasonable. Mr. Moorman has practiced law for four years and the quality of his legal work in this case is commendable. Thus, an hourly rate of $110 is reasonable for Mr. Moorman. (Aff. of David G. Archer at ¶ 5.)

■ As for Mr. Ford, the senior partner who guided Mr. Moorman's work, the Court believes an hourly rate of $175 is reasonable. Mr. Ford is an established attorney with more than twenty years experience in prosecuting civil rights cases. Thus, Mr. Ford certainly could command the maximum hourly rates charged by attorneys in the Rome Division of the Northern District of Georgia. Accordingly, an hourly rate of $175 is reasonable for Mr. Ford. (Aff. of David G. Archer at ¶ 5.)

### B. Reasonable Number of Compensable Hours

■ In determining the number of hours reasonably expended on a civil rights case, courts must review each attorney's "billing judgment" to weed out " 'excessive, redundant, or otherwise unnecessary' hours." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir.1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983)). "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Norman*, 836 F.2d at 1301.

■ The party seeking an award of attorney's fees has the burden of introducing evidence to establish the number of hours spent litigating the case. The Court then has the discretion to reduce the number of compensable hours to reflect excessive or unnecessary work on given tasks. *Norman*, 836 F.2d at 1301. The Court, however, "should identify the hours disallowed and explain why they are disallowed." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

Plaintiff has introduced detailed billing summaries indicating (1) Mr. Moorman spent 120.9 hours working on Plaintiff's case; and (2) Mr. Ford spent 33.0 hours working on Plaintiff's case. Defendants do not challenge the number of hours Mr. Moorman worked on Plaintiff's case, and the Court believes Mr. Moorman's hours are reasonable. Accordingly, the Court concludes that Mr. Moorman reasonably expended 120.9 hours on Plaintiff's case.

■ Defendants object to Plaintiff being awarded attorney's fees for the 33 hours Mr. Ford worked on Plaintiff's case. Defendants assert two arguments to support their position. First, Defendants argue that Mr. Ford should not be compensated for the 7.5 hours Mr. Ford spent reviewing Plaintiff's case in 1993, because Mr. Ford subsequently passed the case on to another attorney.[6] Second, Defendants argue that Mr. Ford's remaining hours are duplicative of Mr. Moorman's hours, and that "[n]o showing of any need or justification to allow two attorneys to bill for the handling of [Plaintiff's] case has been shown." (Defendants' Response at 3.)

As for Defendants' first argument, the Court agrees that Plaintiff cannot recover attorney's fees for the 7.5 hours Mr. Ford spent reviewing Plaintiff's case in 1993. Mr. Ford ultimately decided not to prosecute Plaintiff's case in 1993. Additionally, much of Mr. Ford's 1993 "review" of Plaintiff's case is duplicated by his 1995 "review" of the case. The Court therefore concludes that Mr. Ford's compensable hours must be reduced by 7.5 hours.

■ As for Defendants' second argument, the Court does not believe Mr. Ford's

---

6. After the other attorney represented Plaintiff for more than one year, Mr. Ford took over

Plaintiff's case in 1995.

remaining hours were unnecessary or duplicative of Mr. Moorman's hours. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir.1988).

Mr. Moorman and Mr. Ford each made a "distinct contribution" to Plaintiff's case. Mr. Moorman initially drafted the pleadings and briefing necessary for prosecuting Plaintiff's case. Mr. Ford reviewed Mr. Moorman's work and provided Mr. Moorman with suggested improvements for his work product. Mr. Ford also spent time advising Mr. Moorman how to deal with discovery problems and potential trial issues. The Court believes that when an experienced attorney provides a junior attorney with guidance and advice regarding the prosecution of a specific case, the experienced attorney makes a distinct and compensable contribution to the case. For this reason, the Court concludes that Mr. Ford reasonably expended 25.5 hours on Plaintiff's case.

### C. Summary of Fees Awarded

Plaintiff does not claim his recovery of attorney's fees should be adjusted upward from the lodestar amount in order to reflect the degree of success he has achieved. The Court therefore will not address the issue of fee enhancement. Instead, the Court simply will calculate the amount of attorneys' fees Plaintiff is entitled to receive under the lodestar.

Mr. Moorman worked 120.9 hours at an hourly rate of $110. Thus, Plaintiff may recover $13,299 in attorney's fees for the services performed by Mr. Moorman. Mr. Ford worked 25.5 hours at an hourly rate of $175. Thus, Plaintiff may recover $4,462.50 in attorney's fees for the services performed by Mr. Ford. In sum, Plaintiff may recover attorney's fees totaling $17,761.50.

### III. Conclusion

ACCORDINGLY, the Court **GRANTS** Plaintiff's Motion for Award of Attorney's Fees [52] to the extent the Motion is consistent with this Order and **ORDERS** that Plaintiff be awarded attorney's fees of $17,761.50.

IT IS SO ORDERED.