**Joseph D. HARBAUGH, Plaintiff,**

v.

**Christian Rene GRESLIN, Patrick Pirim, Igor Marie de L'Isle a/k/a Jean Pierre Marie L'Isle, Holding B.E.V., S.A., and Carlus Magnus Limited, Defendants.**

**No. 03–61674–CIV–COHN/SNOW**

United States District Court, S.D. Florida.

April 12, 2005.

William Joseph Brown, Robert Newton Harris, The Harris Law Firm, Miami, FL, for Plaintiff.

Susan Fleischner Kornspan, Karen Jessica Jerome Smith, Greenberg Traurig Phillips Point, West Palm Beach, FL, for Defendants.

### ORDER

COHN, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Verified Motion For Attorneys' Fees, Costs, and Expenses Against

Defendants [DE # 421] and Defendants' Verified and Certified Motion For Attorneys' Fees [DE # 420]. The Court has reviewed the motions, the respective responses [DE ## 435, 442], the respective replies [DE ## 444, 449], Plaintiff's Amendment to Motion For Attorneys' Fees and Defendant's Response [DE ## 441, 452], the accompanying affidavits and declarations, and the applicable law, and is otherwise duly advised in the premises.

## I. BACKGROUND

This action stems from an agreement entered into between the parties with respect to a novel technology, GVPP, capable of replicating human vision. The General Visual Perception Processor ("GVPP") is a silicon chip researched and developed by Defendant Pirim and funded by Defendants Greslin and L'Isle through Defendants Holding B.E.V. S.A. ("BEV") and Carlus Magnus Limited ("Magnus"). (DE # 103 at ¶ 14). It is able to replicate human vision in that it detects the presence of objects in a motion video signal and then locates and tracks those objects as they move in real time. (DE # 103 at ¶ 15). On November 9, 1997, Plaintiff and Defendant L'Isle concluded negotiations of an Agreement whereby Plaintiff would recruit, train, and lead a negotiation team for the sale or license of GVPP. (See Second Amended Complaint, DE # 103 at ¶ 24). Pursuant to the Agreement, Plaintiff would also recruit advisors to develop an accurate valuation of GVPP to support its sale or licensure and promote it through advertising and marketing. (DE # 103 at ¶ 24).

In his Second Amended Complaint, however, Plaintiff alleged that Defendants made a number of false representations to induce him to enter into the November 9, 1997 Agreement. In reliance on these representations and the Agreement, Plaintiff claims to have invested substantial amounts of time in fulfilling his contractual obligations. (DE # 103 at ¶ 40). Plaintiff's Second Amended Complaint contained the following counts: (1) fraud and deceit; (2) constructive fraud; (3) unjust enrichment; (4) request for equitable lien and injunctive relief; (5) breach of contract; and (6) rescission.

The Court entered summary judgment for Defendants as to Count II for constructive fraud [DE # 340], and Plaintiff withdrew Count III for unjust enrichment and Count VI for rescission during trial. On January 7, 2005, the jury returned a verdict in favor of Defendants as to Count I for fraud and in favor of Plaintiff as to Count V for breach of contract. (See Verdict Form, DE # 405). The jury awarded Plaintiff $2,000,000 for the contract breach. The parties now bring the instant motions for attorneys' fees and costs, arguing that they are each entitled to an award of attorneys' fees.

## II. ATTORNEY'S FEES

### A. Entitlement to Fees

Both parties claim an entitlement to fees pursuant to the terms of the Agreement. The "Construction and Enforcement" clause under Appendix C of the Agreement states in pertinent part:

> If it becomes necessary for any party to institute legal action (including, without limitation, arbitration) to enforce the terms and conditions of this Agreement, the successful party will be awarded reasonable attorneys' fees at all levels, including trial and appellate, as well as expenses and costs.

See DE # 421, Exh. D. See also Sholkoff v. Boca Raton Cmty. Hosp., Inc., 693 So.2d 1114, 1118 (Fla. 4th DCA 1997)("attorney's fees are recoverable from another party ... when the parties have so agreed in advance or when the legislature has so

provided in an applicable statute."). Under this provision, Plaintiff seeks $2,686,277.24 in attorneys' fees and costs, while Defendants request an award of $457,185.43.

## B. Prevailing Party

Given that the jury awarded Plaintiff $2 million in damages under the breach of contract claim, Plaintiff seeks attorneys' fees pursuant to the terms of the Agreement. Defendants also argue that they are entitled to attorneys' fees and costs under the Agreement. The Agreement provides that the "successful party" will be awarded reasonable attorneys' fees. Defendants argue that they are the successful or prevailing party because "the party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorneys' fees." (*See* DE # 420 at 1–2, *citing Moritz v. Hoyt Enterprises, Inc.*, 604 So.2d 807, 810 (Fla.1992)). Defendants argue that they prevailed on the significant issues in the litigation: the primary issue of fraud,[1] one of the two contract breach claims, and all other claims brought by Defendants.

█ The Court finds, however, that the relevant inquiry involves determining which party prevailed on the breach of contract claim given that the parties are entitled to attorneys' fees based on the contract. *See Lochrane Eng'g, Inc. v. Willingham Realgrowth Inv. Fund, Ltd.*, 563 So.2d 719 (Fla. 5th DCA 1990)("where a plaintiff, in a multi-count complaint, (1) asserts a claim to which is appurtenant a provision for attorney's fees to the prevailing party and, (2) asserts other theories of recovery which do not include provision for prevailing party attorney's fees, one party or the other is a prevailing party as to the cause of action involving those fees independent of which party wins or loses on the other theories of recovery asserted in the same cause."). Plaintiff clearly prevailed on the breach of contract claim as he was awarded $2 million in damages.[2] However, Defendants argue that there were two separate breach of contract claims on the verdict form: question 7 & 13. The jury found for Plaintiff on question 7. Question 13 asked the jury whether Defendant Marie and/or Defendant Carlus Magnus intentionally avoided realizing profits on the sale of Carlus Magnus or GVPP that would entitle Plaintiff to his commission under the agreement. The jury found for the Defendants by answering "no" and did not award any damages under the question.

In response, Plaintiff argues that this question did not constitute a separate breach of contract claim, but an alternative theory of liability for breach of contract. The Court agrees and finds that the two questions did not constitute separate claims, but rather alternative theories of liability for breach of contract. As such, the Court finds that the successful party, entitled to fees under the contract, is Plaintiff Harbaugh.

---

1. Defendants argue that the fraud claim was the primary issue in the case because Plaintiff originally brought suit alleging primarily fraudulent inducement and constructive fraud, adding a breach of contract claim only in the Second Amended Complaint.

2. The jury answered "yes" to question 7, which asked whether they found by a preponderance of the evidence "[t]hat Igor Marie De L'Isle or Carlus Magnus Limited breached the November 9, 1997 Agreement by failing to pay Plaintiffs sums due him under the contract from: (1) the sale of GVPP; (2) the sale of any ownership interest or stock in Carlus Magnus and any other entity owning any right or interest in GVPP; (3) the licensing of GVPP; (4) the transfer of any ownership of, or any right to use GVPP, Carlus Magnus, BEV Stockplus, or the patents that encompass the GVPP technology?"

## C. Contingency Fee Agreement

As compensation for representation, Plaintiff and his counsel entered into a contingent fee agreement, providing for a fee of 33–1/3% of any recovery. (*See* DE # 449, Exh. 3). The agreement was reduced to writing and signed by Plaintiff and his counsel. Plaintiff now alleges that his attorney Robert Harris later modified the fee agreement with Plaintiff to include attorneys' fees as awarded by the Court. (*See* DE # 449 at 8). This alleged modification occurred immediately after Defendants filed their claim for attorneys' fees against Plaintiff in August and October 2004 (*See id.*). Such a modification of a contingency fee agreement is relevant because it removes the cap on recovery, allowing a court to apply a contingent risk multiplier and award reasonable attorneys' fees which exceed the contingency amount. *Foodtown, Inc. of Jacksonville v. Argonaut Ins. Co.,* 102 F.3d 483, 484 n. 2 (11th Cir.1996). Otherwise, the contingent fee agreement establishes the maximum amount that the court can award. *Id.* at 485.

In order for the cap to be lifted, however, the contingent fee agreement must be reduced to writing as established by the Eleventh Circuit in *Foodtown. Id.* at 485. Like here, the appellant in *Foodtown* had entered into a written, contingent fee agreement. Appellant and the law firm later modified the agreement orally so that the law firm would receive the greater of either a sliding scale percentage of recovery or a court-determined reasonable amount. The Court refused to recognize the oral agreement, finding that the written agreement controlled the award of attorneys' fees, and therefore, established the maximum amount that the court could award. *Id.* The Court affirmed the trial court's award, which limited attorneys' fees to the maximum amount set forth under the contingency agreement, finding that the district court properly employed the clear, enforceable, written contract between the parties. *Id.*

■ Here, Plaintiff alleges that the contingent fee agreement was amended to include attorneys' fees as awarded by the court. Yet, such an agreement was not reduced to writing. The written agreement signed by Plaintiff and his attorneys only provides that the contingent fee will be 33–1/3% through trial. (*See* DE # 449, Exh. 3). Therefore, pursuant to *Foodtown,* the Court will enforce the written contract between the parties and limit the maximum award of attorneys' fees to 33–1/3 % of the amount Plaintiff recovered, or $2 million plus pre-judgment interest for a total of $2,623,232.86. (*See* Amended Final Judgment, DE # 419). *See World Service v. Bodiford,* 537 So.2d 1381 (Fla.1989)(percentage fee determined by the amount of principal coverage plus interest). The maximum amount of attorneys' fees recoverable by Plaintiff is $874,410.95. However, the fee agreement does not substantially control a court's determination of reasonable fees to be awarded. *See Foodtown,* 102 F.3d at 485 ("[a] fee agreement entered into between a prevailing party and its attorneys does not substantially control a court's determination of reasonable fees to be awarded ... Rather, the fee merely establishes the maximum amount that the court can award."); *Florida Patient's Compensation Fund v. Rowe,* 472 So.2d 1145, 1151 (Fla.1985)("because the party paying the fee has not participated in the fee arrangement between the prevailing party and that party's attorney, the arrangement must not control the fee award"). Therefore, the Court will calculate the attorneys' fee award using the lodestar method to determine if the amount is lower than the maximum allowed under the agreement.

## D. Lodestar Method

■ A reasonable award of attorney's fees is calculated using the lodestar method, which requires the court to multiply the reasonable hours expended by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988); *Cuban Museum of Arts & Culture, Inc. v. City of Miami,* 771 F.Supp. 1190, 1191 (S.D.Fla.1991). The court must then consider whether this amount should be adjusted based on partial or exceptional success. *Norman,* 836 F.2d at 1302. The fee applicant bears the burden of establishing entitlement to the award and documenting the appropriate hours and hourly rates. *ACLU v. Barnes,* 168 F.3d 423 (11th Cir.1999). In addition, the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness." *Cullens v. Georgia Dept. of Transp.,* 29 F.3d 1489, 1492–93 (11th Cir. 1994).

### 1. Reasonable Number of Hours Expended on Litigation

■ Plaintiff seeks reimbursement for 1725.66 hours expended by Mr. Brown and 561.80 hours expended by Mr. Harris.[3] As noted above, the district court must determine whether the hours expended are reasonable. A fee applicant bears the burden of documenting the appropriate hours expended so that the court may properly assess the time claimed for each activity.

---

**3.** Plaintiff provided these numbers in his amended motion for attorneys' fees, which decreased the award originally requested to conform with the lowest figure provided by Plaintiff's experts. (*See* DE # 441). The Court notes that the declarations of Plaintiff's two experts, Mr. Hoffman and Mr. Richman, differ with respect to the number of hours expended by Mr. Brown and Mr. Harris based upon an alleged review of the same time

*See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *Norman,* 836 F.2d at 1301. Excessive, redundant or otherwise unnecessary hours should not be included in the calculation. *See Barnes,* 168 F.3d at 427.

In the instant case, Plaintiff has filed time records detailing the number of hours expended by his attorneys. (*See* DE # 421, Exh. A). Defendants contest the following items: (1) time expenditures providing insufficient description and fees for investigative work already denied; (2) fees for claims upon which Plaintiff did not prevail and hours for work prior to the breach of contract claim; and (3) fees for excessive, redundant or unnecessary work.

#### a. Insufficient Description Provided and Fees for Investigative Work Already Denied

Defendants argue that Plaintiff has provided insufficient description in his time records to adequately determine if fees are recoverable. Defendants are correct that "the general subject matter of the time expenditures should be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *See Schafler v. Fairway Park Condominium Association,* 324 F.Supp.2d 1302, 1310 (11th Cir.2004). Defendants argue that the Court should exclude the 22 time entries totaling 184.50 hours, where Plaintiff simply wrote "file review," because the time entries provide an insufficient description. However, in his reply, Plaintiff submitted a detailed explanation of such time entries. (*See* DE # 449, Second Dec-

---

records. (*See* DE ## 428, 434). Plaintiff explains the discrepancy by alleging that Mr. Richman "err[ed] on the side of caution" and deducted time that could arguably be attributed to any non-contractual issue, reducing Plaintiff's original fee request by ten percent. (*See* DE # 449 at 6). The Court notes, however, that nowhere in his Declaration does Mr. Richman state that he made such a reduction.

laration of Brown, Exh. 6). The Court reviewed the Second Declaration of Brown and finds that the contested entries now provide sufficient particularity for the court to assess the time claimed.

Defendants also argue that these same time entries for "file review" should be excluded because they constitute fees for investigative work already denied. In his reply, Plaintiff explains that these time entries constitute hours spent by Plaintiff's counsel reading pages of documents over the five months prior to the filing of the lawsuit. Defendants note, however, that at trial Plaintiff sought to recover these hours as damages. Defendants argue that Plaintiff's counsel admitted at trial that Plaintiff failed to put any evidence into the record to support such damages and thereby failed to meet his burden of proof. Thus, Plaintiff has already lost these damages at trial and should not attempt to recover them a second time.[4]

■ The Court agrees with Defendants and will exclude the time spent by Plaintiff's counsel on "file review." This includes 132.6 hours expended by Mr. Brown and 51.9 hours expended by Mr. Harris, reducing Mr. Brown's total hours from 1,725.66 to 1,593.06 and Mr. Harris' hours from 561.80 to 509.9.

### b. Fees Upon Which Plaintiff Did Not Prevail and Work Prior to the Breach of Contract Claim

Defendants argue that Plaintiff seeks recovery of all of his fees, including those for which he did not prevail. The United States Supreme Court has stated that fees may not be awarded for unsuccessful, unrelated claims. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Thus, Plaintiff can only recover fees associated with the breach of contract claim. For this same reason, Defendants

contest the inclusion of hours for work done in the case prior to the time Plaintiff filed his breach of contract claim, which was plead for the first time in his Second Amended Complaint.

The Court agrees that hours for work done prior to Plaintiff's filing of the breach of contract claim must be excluded. Defendants request that any hours for work performed prior to June 2004, when the Court granted Plaintiff leave to file his Second Amended Complaint, be excluded. However, the Court finds more reasonable the exclusion of hours expended prior to Plaintiff's filing of his motion for leave to file his Second Amended Complaint on March 19, 2004 [DE # 51]. The Court, therefore, excludes time for work done between August 2003 and March 17, 2004. This excludes 217 hours expended by Mr. Brown and 4.8 hours expended by Mr. Harris, decreasing the totals to 1,376.06 for Mr. Brown and 505.1 for Mr. Harris.

■ With respect to the exclusion of fees for work performed on claims other than the breach of contract claim, the Court agrees that Plaintiff can only recover for fees associated with the contract breach claim. After examining the time records provided, the Court finds that the total hours requested should be reduced by an additional 10% to exclude time spent on claims other than the breach of contract claim. This exclusion reduces Mr. Brown's total expended hours from 1,376.06 to 1,238.45 and reduces Mr. Harris total hours from 505.1 to 454.59.

### c. Excessive, Redundant, or Unnecessary Work

Excessive, redundant, or unnecessary hours must be excluded from the amount claimed. *Norman*, 836 F.2d at 1301. Defendants highlight that Plaintiff repeatedly

---

4. The Court notes that Plaintiff did not address this issue in his reply.

seeks more than 24 hours in one day for one attorney's time. For example, on August 6, 2004 and July 19, 2004, Mr. Brown billed as many as 111.4 hours and 103.7 hours for a single day. Additionally, Defendants point to other instances where Mr. Brown billed his time as a block and then also billed for additional tasks purportedly completed on the same days contained within those blocks of time. For instance, Mr. Brown has a block time entry of 80 hours, covering the five days from May 25, 2004 to May 29, 2004, but in addition has time entries for the specific days within that block period. Adding the number of hours spent within that five day period equals a total of 147.40 hours, or approximately 29.48 hours a day.

In response, Plaintiff states that the dates in the time records refer to the date the item was served or filed, rather than the date the work was done. The Court has checked the date on Plaintiff's time records against the Court docket and finds that Plaintiff's records track time according to the date on which a particular pleading was filed as opposed to the date on which the work for the pleading was done. Though this system of tracking the number of hours billed creates some confusion with respect to days when more than 24 hours are billed, it does simplify the Court's task of determining if the amount of time spent on a particular task is excessive or unnecessary. Having reviewed the time records and the entries for particular tasks, the Court finds that the hours should be reduced by an additional 10% percent to eliminate unnecessary and excessive hours. This reduces the hours from 1,238.45 to 1,114.60 for Mr. Brown and from 454.59 to 409.13 for Mr. Harris.

### 2. Reasonable Hourly Rate

The next step in calculating the lodestar amount involves determining the reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services, by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *Id.* Satisfactory evidence is at a minimum more than the affidavit of the attorney performing the work and can involve direct evidence of charges by lawyers under similar circumstances or opinion evidence. *Id.*

In the instant case, Plaintiff has requested that the attorneys' fee amount be calculated at an hourly rate of $500 for William J. Brown, Esq. and $300 for Robert N. Harris, Esq. Plaintiff provides the expert affidavits of Richman and Hoffman. Defendants contest these hourly rates, however, arguing that the declarations do not support such a finding as they do not address rates actually billed and paid in similar lawsuits. Additionally, Defendants argue that these rates should be reduced based on the legal skill of Plaintiff's counsel, taking into account the practitioner's initial case assessment, organization and efficiency, knowledge of trial practice, and persuasiveness.

In *Norman*, the Eleventh Circuit explained that satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits, adding that "[t]estimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." 836 F.2d at 1299. The Court further stated that the weight to be given to opinion evidence will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge. *Id.*

Neither Plaintiff nor Plaintiff's experts provide a range of prevailing market rates. Additionally, Plaintiff's experts do not pro-

vide a great deal of detail regarding market rates and the charges of lawyers under similar circumstances. Hoffman and Richman state the nature of their practice and their experience in litigating complex commercial cases, but do not state how much they charge in similar cases. Both declarations simply state that $500 and $300 per hour, for Mr. Brown and Mr. Harris, respectively, "are the reasonable and customary fees charged in the Southern District of Florida for lawyers with comparable skill, experience, and expertise" (*See* DE #428 at ¶ 18; DE# 434 at ¶ 17). Moreover, the Court notes that the hourly rates charged by Defendants' counsel were lower. The maximum hourly rate charged by Ms. Kornspan, a shareholder, was $400, and by Ms. Smith, an associate, was $270. (*See* DE # 420).

 Given that in determining the fee award and the rate to employ, the court is "itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value," the Court determines that the reasonable hourly rates should be $400 for Mr. Brown and $270 for Mr. Harris. *Norman,* 836 F.2d at 1303.

### 3. Lodestar Amount

Multiplying the reasonable hourly rate by the reasonable hours expended, results in a total lodestar amount of $445,840 for work performed by William J. Brown, Esq. and $110,465.1 for work performed by Robert N. Harris, Esq., as detailed below.

| Attorney | Hours | Hourly Rate | Fees |
|---|---|---|---|
| William J. Brown | 1,114.60 | $400 | $445,840 |
| Robert N. Harris | 409.13 | $270 | $110,465.1 |

Therefore, the Court finds that the total lodestar amount is $556,305.10 and will award Plaintiff's attorneys' fees in this amount.[5]

### III. COSTS

In addition to attorneys' fees, Plaintiff seeks to recover a total of $108,502.24 in expenses and costs. The agreement includes the recovery by the prevailing party of both "expenses and costs."

Defendants contest the inclusion of certain costs in this calculation. First, Defendants argue that expenses incurred prior to June 2004, when Plaintiff first asserted a breach of contract claim, should not be included in the calculation. Additionally, Defendants argue that fees paid to Baker & McKenzie should also be excluded as they likely pertain to the investigative damages which Plaintiff failed to prove and was denied at trial. The Court agrees that Plaintiff should not recover expenses prior to the addition of the breach of contract claim and will subtract the fees paid to Baker & McKenzie from April 2003 through March 31, 2004 for a total reduction of $19,523.91.

 Second, Defendants argue that the costs incurred by Plaintiff's counsel in flying to London in April 2004 for unilaterally-noticed depositions are not recoverable. Plaintiff responds by stating that the trip was undertaken for investigative purposes. Plaintiff states that counsel flew to London to locate Defendants for proper service, clarifying that even though Defen-

---

5. The Court does not find that a downward adjustment to the lodestar is appropriate in this case. After determining the lodestar, the court must consider the necessity of an adjustment for results obtained. *Norman,* 836 F.2d at 1302. If the result was partial or limited success, the lodestar must be reduced to an amount that is not excessive. *Id.* The Court does not find the fee to be excessive, especially in light of the fact that the fee arrangement was contingent.

dants depositions were also set for that time, Plaintiff only seeks fees for time spent in determining Defendants whereabouts. (*See* DE # 449 at 11–12). However, the Court notes that the time records do not indicate that the costs were for investigative work, but rather state "Europe Depositions April 14–18/04." Given that the depositions never took place, the Court agrees with Defendants and will also decrease the recoverable expenses by $18,841.29.

▪ Third, Defendants contest the amount incurred for videotaping the depositions taken by Plaintiff in London during the week of November 1, 2004 as Plaintiff did not use any of the videotapes during trial. Though the depositions were not used at trial, the Court finds this to be a recoverable expense under the agreement given that the parties could not have anticipated that the depositions would not be used. Lastly, Defendants challenge the inclusion of the $1000 Plaintiff was required to post as an injunction bond and is still required to remain posted. The Court agrees that Defendant should not be required to pay Plaintiff's injunction bond.

Therefore, after adding the above numbers, the Court finds that the expenses and costs should be reduced by $39,365.2 for a total award of $69,137.04 in costs and expenses.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Verified Motion For Attorneys' Fees, Costs, and Expenses Against Defendants and Plaintiff's Amendment to Motion For Attorneys' Fees [DE ## 421 & 441] are hereby **GRANTED IN PART, DENIED IN PART**. Plaintiff is awarded a total amount of $625,442.14 for attorney's fees and costs, which includes attorney's fees in the amount of $556,305.10, and costs and expenses in the amount of $69,137.04;

(2) Defendants' Verified and Certified Motion For Attorneys' Fees [DE # 420] is hereby **DENIED**.