849 So.2d 7 (2003)
McCARTHY BROTHERS COMPANY, Appellant,
v.
TILBURY CONSTRUCTION, INC., and Nobel Insurance Company, Appellees.
Nos. 01-4210, 1D02-0759.
District Court of Appeal of Florida, First District.
March 10, 2003.
Rehearing Denied April 22, 2003.
*8 John R. Hamilton of Foley & Lardner, Orlando, and Thomas F. Munro, II, of Foley & Lardner, West Palm Beach, for Appellant.
James G. Etheredge of James G. Etheredge, Chartered, Fort Walton Beach, and Robert A. Bauman and Robert E. Morris of Robert E. Morris, P.A., Tampa, for Appellees.
HAWKES, J.
In these consolidated appeals,[1] McCarthy Brothers Company (McCarthy) appeals a jury verdict in favor of Tilbury Construction, Inc. (Tilbury), and an award of attorney's fees to both Tilbury and Nobel Insurance Company (Nobel). Nobel cross-appealed. McCarthy argues the trial court erred by: (1) refusing to grant McCarthy's post-trial motion for remittitur or a new trial; (2) using a 2.5 multiplier in calculating the attorney's fee award to Tilbury; (3) granting attorney's fees to Nobel; (4) denying a special verdict form; and (5) its choice of the date from which it calculated an award of prejudgment interest. On cross-appeal, Nobel argues the trial court erred by limiting Nobel's costs and fees recovery to taxable costs only. We find Noble's argument on cross-appeal without merit. We affirm McCarthy's claims (4) and (5) without discussion. We agree with claims (1) through (3), and reverse and remand with instructions.

I.
In late 1994, McCarthy, as general contractor on a condominium project, entered into a $651,673.00 subcontract with Tilbury ("the subcontract" or "the McCarthy-Tilbury contract") to provide sheet rocking and other services. Tilbury paid a premium to Nobel as surety to insure its performance pursuant to the terms of the subcontract. There was no contractual relationship between McCarthy and Nobel.
*9 Under the subcontract, Tilbury agreed to provide the drywall and other work on the condominium project for which McCarthy was the general contractor. However, as McCarthy, the building's owner, and the purchasers of the individual condominium units began ordering changes to the project, the relationship between McCarthy and Tilbury began to sour. During term of the subcontract, two hurricanes damaged the project and set work back several months. In addition to hurricane repairs, change orders continued to come in. Tilbury complained several times about not getting paid for work it had done that was not part of the subcontract. McCarthy, while acknowledging it owed Tilbury for work done on change orders, began complaining Tilbury had insufficient manpower on-site to complete the project.
In May of 1996, McCarthy declared Tilbury in default for insufficient manpower. Tilbury remained on the job site. In June of 1996, Tilbury submitted an invoice for over $196,000.00, which was based on hurricane repairs, change orders, and retainage. Five days after receiving the invoice, McCarthy again declared Tilbury in default for insufficient manpower. Tilbury subsequently amended its invoice total to $192,152.88. Tilbury left the job site and filed suit seeking the $192,152.88. McCarthy counter-claimed for $488,161.63, and filed a third-party complaint against Nobel as surety. At trial, the jury rejected McCarthy's claims and awarded Tilbury $374,709.00. The trial court awarded Tilbury its attorney's fees with a 2.5 multiplier, and awarded Nobel its taxable costs. McCarthy filed a motion for remittitur or new trial, which the trial court denied.

II.
A trial court's ruling on a motion for remittitur is reviewed under an abuse of discretion standard.[2] At trial, Tilbury offered documentary and testimonial evidence to support the amount of the amended invoice as claimed. Although Tilbury's owner made general assertions during his testimony that Tilbury was owed more than this claimed amount, there was no evidence presented from which a jury could form a reasonable basis to exceed the claim and award $374,709.00. Thus, we find that the jury "misperceived the merits relating to the amounts recoverable," in its attempt to compensate Tilbury for McCarthy's breach by awarding an amount for which there is no reasonable basis in the evidence. Fla. Dep't of Transp. v. Hawkins Bridge Co., 457 So.2d 525, 527 (Fla. 1st DCA 1984) (emphasis in original). A court cannot allow a jury to award a greater amount of damages than what is reasonably supported by the evidence at trial.[3] If the jury verdict is excessive, remittitur is an appropriate remedy.[4] Because the evidence presented at trial indicated the maximum allowable award was $192,155.88, we find the trial court abused its discretion by denying McCarthy's motion for remittitur. Accordingly, we reverse and remand as to this claim. On remand, the trial court shall give Tilbury the opportunity to accept a reduction in the verdict to $192,152.88. If Tilbury declines, "the *10 court shall order a new trial in the cause on the issue of damages only."[5]

III.
McCarthy also challenges the use of a 2.5 multiplier in calculating the attorney's fee award to Tilbury, the award of any attorney's fees to Nobel, and argues reversal in the liability appeal requires a reversal of both attorney's fees judgments entered against it below. We find that reversal of the damages awarded in the liability appeal results in a provisional reversal of the attorney's fees awarded Tilbury. If Tilbury elects to accept the remittitur, then the trial court may reimpose the agreed upon lodestar amount of $88,500.00, but with a 2.0, rather than a 2.5 multiplier.
We find the application of a multiplier appropriate for two reasons. First, Tilbury presented expert testimony that it would have been difficult to find an attorney willing to take its case without the opportunity for a multiplier. Due to the complexity of the case and the relative financial positions of the parties, this point is persuasive. Second, the McCarthy-Tilbury contract specifically provided that the party who recovered at least 75% of its claim would be considered the "prevailing party," and receive attorney's fees and costs from the non-prevailing party. Under this high burden, we find the evidence presented below demonstrated "the likelihood of success was approximately even at the outset."[6] A 2.5 multiplier is only appropriate where "success was unlikely at the outset of the case." Quanstrom, 555 So.2d at 834. A 2.0 multiplier is appropriate where "the likelihood of success was approximately even at the outset." Id. Accordingly, a 2.0 multiplier was appropriate. The trial court erred in applying a 2.5 multiplier because the evidence did not support a finding that "success was unlikely at the outset of the case." Id.
However, if there is a new trial on damages, McCarthy and Tilbury will be required to revisit the attorney's fees issue in its entirety, pending the outcome of the new trial. Because there are too many possible contingencies, such as a different result on damages or the effect of an offer of judgment pursuant to section 768.79, Florida Statutes, this court will not address the issue.
Finally, we find that Nobel was not entitled to recover any attorney's fees from McCarthy. The reversal of Nobel's attorney's fees judgment is not provisional. At trial, Nobel based its argument for entitlement to attorney's fees on language contained in the McCarthy-Tilbury contract, to which Nobel was not a party. Nobel claimed a contractual right to recover attorney's fees based upon Articles Six and 10.5 of the McCarthy-Tilbury contract. Article Six defines the scope of the risk or coverage to which Tilbury's surety would be exposed if Tilbury defaulted. It provides: "McCarthy shall be paid by the surety any legal and court costs McCarthy incurs in the enforcement of its rights under said bonds." Article 10.5 provides:

*11 The prevailing party in any legal action between the parties relating to this Agreement shall recover from the other party reasonable legal costs, including attorney's and consultant's fees, in connection with such action. The prevailing party is a party who recovers at least 75% of its total claims in the action or who is required to pay no more than 25% of the other party's total claims in the action.
The McCarthy-Tilbury contract was incorporated by reference into the performance bond agreement between Tilbury and Nobel. Nobel argued the McCarthy-Tilbury contract directly contemplated paying attorney's fees to other parties, such as Nobel, who may later enter into contracts with McCarthy or Tilbury. In the alternative, Nobel argued the McCarthy-Tilbury contract entitled it to recover fees upon successful defense of McCarthy's third-party complaint, pursuant to section 57.105(6), Florida Statutes (2001).[7] We find both arguments unpersuasive.
Contrary to Nobel's arguments, Article 10.5 does not contemplate attorney's fees for any entity other than McCarthy or Tilbury. Moreover, McCarthy had no need to include other parties, like Nobel, because it has a statutory means of recovering attorney's fees from Nobel. See §§ 627.428 and 627.756, Fla. Stat. (2001). These sections are a "one-way street" when it comes to attorney's fees. They allow the beneficiaries of an insurance policy to recover costs and fees if they prevail, but prohibit recovery by the insurance company if it prevails. See U.S. Security Ins. Co. v. Cahuasqui, 760 So.2d 1101 (Fla. 3d DCA 2000).
Additionally, parties not in privity cannot benefit from the reciprocity provisions of section 57.105(6), Florida Statutes. Notably, Article Six of the McCarthy-Tilbury contract refers to costs, not attorney's fees. Thus, even if section 57.105(6), applied to Nobel, the language in Article Six would preclude its application here.

IV.
We affirm the judgment of liability, the denial of the special verdict form, and the date for calculation of prejudgment interest; we reverse the denial of McCarthy's motion for remittitur and remand for further proceedings consistent with this opinion; we provisionally reverse the award of attorney's fees to Tilbury and cap the multiplier at 2.0; and we reverse the award of attorney's fees to Nobel.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
BARFIELD and POLSTON, JJ., concur.
NOTES
[1] Cases 1D01-4210 (the liability appeal) and 1D02-759 (the attorney's fees appeal) were consolidated for the record on appeal, for oral argument, and for purposes of this opinion.
[2] See § 768.74(6), Fla. Stat. (2001); see also Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722, 725 (Fla. 1985); Regency Lake Apartments Assocs., Ltd. v. French, 590 So.2d 970, 975 (Fla. 1st DCA 1991).
[3] See, e.g., Carrousel International Corp. v. Auction Co. of America, Inc., 674 So.2d 162 (Fla. 3d DCA 1996); LoCastro v. Ruane, 525 So.2d 500 (Fla. 5th DCA 1988).
[4] See § 768.74(1), Fla. Stat. (2001); see also Carrousel International Corp., 674 So.2d at 163.
[5] § 768.74(4), Fla. Stat. (2001); see also Gould v. Nat'l Bank of Fla., 421 So.2d 798, 802 (Fla. 3d DCA 1982) (noting "[i]t is also settled law that the function of a remittitur is to correct an improper verdict as to damages, and where the error is only that the damages awarded are excessive it is not proper to retry the issue of liability: remittitur or new trial on damages is the remedy." (citations omitted)).
[6] Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828, 834 (Fla.1990); see also Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403 (Fla. 1999) (applying Quanstrom to cases in which the sole basis for attorney's fees was contractual).
[7] This section provides:

If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This subsection applies to any contract entered into on or after October 1, 1988.