988 So.2d 1206 (2008)
GENCOR INDUSTRIES, INC., Appellant/Cross-Appellee,
v.
FIREMAN'S FUND INSURANCE COMPANY, etc., Appellee/Cross-Appellant.
No. 5D07-2157.
District Court of Appeal of Florida, Fifth District.
August 15, 2008.
*1207 Peter Hoenig and Daniel F. Hayes, of Biedermann, Reif, Hoenig & Ruff, PC, New York, for Appellant/Cross-Appellee, Gencor Industries, Inc., pro hac vice.
Jon D. Derrevere and Shirley Jean McEachern, of Derrevere, Hawkes & Black, West Palm Beach, for Appellee/Cross-Appellant.
PLEUS, J.
Gencor Industries, Inc. ("Gencor") appeals from an amended final judgment awarding Fireman's Fund Insurance Company ("FFIC") over $1.7 million in breach of contract damages. Gencor argues that the contract provisions barred a breach of contract claim. FFIC cross appeals, claiming that the trial court miscalculated the award of prejudgment interest from the dates it paid its insured instead of the date its insured's loss became liquidated. We affirm both appeals and grant FFIC's motion for appellate attorney's fees and costs.

Facts
Gencor manufactures asphalt plants. It contracted with George Reed Industries, Inc. and its holding company, Basic Resources, Inc. (collectively referred to as "Reed"), a California paving contractor, to manufacture a stationary batch asphalt plant for Reed's Lodi, California site at a cost of just under $2 million. The plant was designed to run on liquid propane and produce "batches" of hot asphalt for road paving projects.
Pursuant to the contract, Gencor constructed the component parts of the plant and delivered them to California where Reed prepared the site and erected the parts into a completed asphalt plant. Gencor also agreed to provide specified "installation and start-up service[s]" including "initial calibration of equipment." During this initial calibration procedure, an explosion occurred, severely damaging the plant.
*1208 Reed's property insurer, FFIC, paid Reed over $1.3 million for property damage to the plant, lost profits and other expenses. FFIC, as subrogee of Reed, then sued Gencor, ultimately pursuing one count for breach of contract and one count of negligence. Both counts were based on allegations that a Gencor employee failed to properly calibrate the plant equipment in a safe manner, causing the explosion and damage to the plant.
FFIC presented competent, substantial evidence at trial that during the initial calibration process, Gencor employee Calvin Dixon negligently energized a gas line, which filled a drum with propane. Then, when Dixon pushed the pilot light button, the drum exploded, causing extensive damage to Reed's newly constructed asphalt plant. In layman's terms, normally the pilot light is ignited and then the gas is turned on, but in this case, the gas was turned on and then the pilot light was ignited, causing the explosion.
At the close of FFIC's case, Gencor moved for a directed verdict on both claims. It argued that the negligence claim was barred by the economic loss rule and the breach of contract claim was barred by specific provisions in the contract. The trial court denied Gencor's motion. The jury returned a verdict for FFIC on both counts. On the breach of contract count, the jury awarded FFIC a total of $1,193,825 for property damage, lost profits and additional expenses. On the negligence claim, the jury found Gencor 60% responsible and Reed 40% responsible.
In the final judgment, the trial court noted the jury's verdict on the negligence count for $716,194, which reflected a 40% reduction for comparative negligence. However, the court entered judgment "solely on the Breach of Contract Count in the total sum of $1,916,089.12," which consisted of the jury award of $1,193.825 plus prejudgment interest of $722,264.12. The court calculated prejudgment interest at 11% from July 1, 2001, which was the "earliest date on which all of the liquidated damage ... was incurred."
The court later entered an amended final judgment reducing the amount of prejudgment interest from $722,264.12 to $558,088.15. This reduction was based on calculating the interest from the dates that FFIC paid Reed instead of the date that Reed's damages became liquidated.
The parties timely appealed and cross-appealed.

The Breach of Contract Claim
Gencor does not challenge the jury's finding that it breached the contract. Instead, it argues that various contract provisions bar FFIC's breach of contract claim. It argues that once Reed accepted the goods delivered by Gencor, the risk of loss shifted to Reed. In support of this argument, it notes that the contract stated that "[t]he purchaser is responsible for and assumes all risks of loss or damage by fire, theft, lifting, hoisting, or other casualty for the full amount of the contract and agreement with Gencor." It also stated, "Title to, risk of, and liability for loss or damages to any Products or Parts shall pass to Purchaser on Delivery at such F.O.B. point."
We believe that the above provisions relate to losses during shipment, not to losses arising from Gencor's negligent performance of contract services subsequent to shipment. Florida law disfavors agreements to indemnify parties against their own wrongful acts. Such agreements are not enforceable in the absence of a "clear and unequivocal contractual expression of such an intent." Jones v. Holiday Inns, Inc., 407 So.2d 1032, 1034 (Fla. 1st DCA 1981). In this case, as in Jones, the *1209 risk of loss provisions asserted by Gencor did not "clearly and equivocally" express an intent to indemnify Gencor against its own negligence. Id.; see also Charles Poe Masonry v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla. 1979); Leadership Housing v. T & S Elec., 384 So.2d 733, 734 (Fla. 4th DCA 1980).
Gencor also claims FFIC's breach of contract action was barred by the warranty, disclaimer and release provisions in the contract. However, these provisions pertain to product defects, not to Gencor's performance of services. The warranty provision which warrants that the parts will be manufactured according to specification and will be free from "defects in workmanship and material" for six months from date of shipment. Similarly, the disclaimer and release provision expressly relates to product defects. It also fails to clearly and equivocally disclaim liability for Gencor's negligent performance of services. Accordingly, none of the contract provisions raised by Gencor prohibited FFIC from pursuing its breach of contract claim under the facts of this case.

The Negligence Claim
Gencor also argues that the trial court erred by not dismissing FFIC's negligence claim because it was barred by the economic loss rule. However, because the trial court entered final judgment solely on the breach of contract claim, and we are affirming the breach of contract award, we see no need to fully address Gencor's economic loss argument. We simply observe that the negligence claim appears to be barred by the economic loss rule because the parties were in contractual privity, the property damaged was the subject of the contract, and the negligence was not "independent from acts that breached the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla.1996). However, even if the trial court erred in submitting the negligence claim to the jury, the error was harmless because the court entered final judgment only on the breach of contract claim. Thus, Gencor suffered no prejudice from this error because a different result would not have been reached. See Katos v. Cushing, 601 So.2d 612, 613 (Fla. 3d DCA 1992) (in civil cases, the harmless error test is "whether, but for such error, a different result may have been reached.").

Cross Appeal
FFIC argues that the trial court erred by calculating prejudgment interest from the date that FFIC paid Reed's claim instead of the date Reed's claim became liquidated. The same argument was rejected in Burns International Security Services of Florida v. Philadelphia Indemnity Insurance Co., 899 So.2d 361, 368 (Fla. 4th DCA 2005), which found "no basis in law or fact" for it. Instead, the court held that an insurer's claim for prejudgment interest runs from the date it paid its insured, not from the date the insured's loss occurred.
Although Burns did not elaborate on its holding, Gencor points to a federal case to demonstrate the soundness of the Burns decision. In American National Fire Insurance Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Systems, Inc., 325 F.3d 924, 935-37 (7th Cir. 2003), the court explained:
The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss. Consequently, prejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued....

*1210 It is settled that, as a general rule, an insurer steps into the shoes of the insured and "acquires no greater or lesser rights than those of the insured." However, there is a limitation on the rights of a subrogee that must be taken into account: The right of subrogation is generally one of indemnification; consequently, a subrogee "is entitled to indemnity to the extent only of the money actually paid by him to discharge the obligation ... or the value of the property applied for that purpose."
.... [Thus,] several state courts have allowed prejudgment interest from the date of payment by the insurance company, rather than from the date of the insured's injury.
The law is the same in Florida: "A surety who performs or pays on behalf of a obligee steps into the shoes of the obligee to the extent of performance or payment." Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A., 540 So.2d 113, 116 (Fla.1989) (quoting Nat. Shawmut Bank v. New Amsterdam Cas. Co., 411 F.2d 843, 844-45 (1st Cir.1969)) (emphasis added).
FFIC contends that Burns conflicts with Florida's leading case on the calculation of prejudgment interest, Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985). We disagree. In Argonaut, the Florida Supreme Court held that "for the purpose of assessing prejudgment interest, a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date." Id. at 214 (quoting Bergen Brunswig Corp. v. Dep't of Health and Rehab. Servs., 415 So.2d 765, 767 (Fla. 1st DCA 1982)).
Although the plaintiff in Argonaut was an insurer pursuing a subrogation claim against a tortfeasor after paying its insured's claim, the issue in Argonaut was different than the issue raised in this appeal. In Argonaut, the issue was whether prejudgment interest should be awarded at all where the jury finds the plaintiff comparatively negligent. The supreme court held that prejudgment interest was awardable and adopted the above-stated rule. However, at the end of the Argonaut opinion, the court summarized its holding a bit differently, stating, "In short, when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." Id. at 215 (emphasis added). This statement suggests that if the plaintiff is the injured party, prejudgment interest accrues from the date its loss becomes liquidated, but if the plaintiff is the injured party's insurer, prejudgment interest accrues from the date it suffers "out-of-pocket, pecuniary loss." Thus, we believe Burns is consistent with Argonaut and that the trial court correctly calculated prejudgment interest from the date of FFIC's loss, i.e., its payments to Reed.
Gencor further argues that the trial court erred in calculating the amount of loss, but it raises this argument for the first time in its reply brief, which is improper. See, e.g., Martinez v. Ipox, 925 So.2d 448, 450 (Fla. 2d DCA 2006).

Appellate Attorney's Fees
FFIC requests appellate attorney's fees and costs based on the fact that it obtained a judgment over 25% greater than its proposal for settlement. Gencor argues that FFIC's proposal for settlement was ambiguous regarding which claims it would resolve because at one point it stated it would "settle all claims made against said Defendant" and at another point it stated it would "settle all pending claims by FFIC against Defendant." Gencor fails to explain how these two statements create an ambiguity and at oral argument, Gencor *1211 withdrew this argument. Consequently, we reject this argument.
Gencor also argues that FFIC's claim for appellate attorney's fees is precluded by its bankruptcy discharge and the parties subsequent stipulation. At the time of the explosion, it had filed for bankruptcy. Its subsequent discharge from bankruptcy barred actions for pre-discharge liabilities. Subsequently, FFIC, Gencor, and its insurer, American Gerling Insurance Company, entered into a stipulation stating in pertinent part:
2. Fireman's Fund, Gencor and American Gerling do hereby stipulate and agree that the discharge injunction resulting from the confirmation of Gencor's Fourth Amended Plan of Reorganization in the Gencor Bankruptcy does not prohibit Fireman's Fund from pursuing this action against Gencor solely for the purpose of recovering any and all available insurance proceeds which cover the Claim; provided, however, that any judgment obtained against Gencor in this action may not be collected by Fireman's Fund in personam against Gencor.
3. Gencor and American Gerling hereby stipulate to immediately withdraw any bankruptcy defense in this action.
Gencor claims this stipulation permitted a suit for "the Claim" but not for attorney's fees and costs. Gencor argues that because FFIC's request for appellate attorney's fees is not within the meaning of "the Claim" as used in the stipulation, it is precluded by the bankruptcy discharge. It cites no authority for this proposition. The term "Claim" is not defined in the stipulation.
Gencor's argument that attorney's fees do not fall within "the Claim" defies common sense. If Gencor agreed that FFIC could proceed with its claim, this would logically include FFIC's ability to avail itself of the right to serve a proposal for settlement and ultimately obtain attorney's fees. Furthermore, the stipulation reflects that Gencor agreed to withdraw "any bankruptcy defense in this action."
Accordingly, we grant FFIC's motion for appellate attorneys fees. The amount should be determined by the trial court. However, pursuant to the stipulation, the award should note that FFIC cannot collect fees against Gencor in personam.
AFFIRMED; REMANDED FOR DETERMINATION OF APPELLATE ATTORNEY'S FEES AND COSTS.
MONACO, J. and TURNER, G., Associate Judge, concur.