INTERNATIONAL FIDELITY INSUR-
ANCE COMPANY, a Foreign Corpo-
ration, and Allegheny Casualty
Company, a Foreign Corporation,
Plaintiffs,

v.

AMERICARIBE-MORIARITY JV,
a joint Venture, Defendant.

Case No. 15–24183–Civ–
COOKE/TORRES

United States District Court,
S.D. Florida.

Entered on FLSD Docket 02/14/2017

Jeffrey Scott Geller, Edward Etcheverry, Etcheverry & Harrison LLP, Plantation, FL, Joyce Cruz Albert, Etcheverry Harrison LLP, Fort Lauderdale, FL, for Plaintiffs.

Richard Robert Chaves, Ciklin Lubitz & O'Connell, West Palm Beach, FL, for Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS

MARCIA G. COOKE, United States District Judge

THIS MATTER is before me upon U.S. Magistrate Judge Edwin G. Torres' (1) Report and Recommendation on Plaintiffs' Motion for Costs (ECF No. 88), and (2) Report and Recommendation on Plaintiffs' Motion to Tax Attorneys' Fees (ECF No. 92). Plaintiffs' Motions were referred to Magistrate Judge Torres pursuant to 28 U.S.C. § 636(b)(1)(A). *See* ECF Nos. 77, 82.

Judge Torres recommends that Plaintiffs' Motion for Costs be granted, and that Plaintiffs be awarded $6,018.45 in taxable costs. Judge Torres also recommends that Plaintiffs' Motion to Tax Attorneys' Fees be granted, and that Plaintiffs be awarded $154,536.00 in attorneys' fees. After reviewing Plaintiffs' Motions, Judge Torres'

Reports and Recommendations, and the relevant legal authorities, as well as conducting a *de novo* review of the record, I find Judge Torres' Reports and Recommendations clear, cogent, and compelling.

Accordingly, Judge Torres' (1) Report and Recommendation on Plaintiffs' Motion for Costs (ECF No. 88), and (2) Report and Recommendation on Plaintiffs' Motion to Tax Attorneys' Fees (ECF No. 92) are **AFFIRMED and ADOPTED** as Orders of this Court. It is hereby **ORDERED and ADJUDGED** that Plaintiffs' Motions (ECF Nos. 76, 81) are **GRANTED**. A separate judgment will issue awarding attorneys' fees and costs.

DONE and ORDERED in Chambers, at Miami, Florida, this 14th day of February 2017.

EDWIN G. TORRES, United States Magistrate Judge

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION TO TAX ATTORNEYS' FEES

This matter is before the Court on Plaintiffs' Motion to Tax Attorneys' Fees [D.E. 81] that was referred for a Report and Recommendation. [D.E. 82]. The Court has reviewed the motion and its supporting materials, Defendant's opposition and supplemental materials and authorities, and Plaintiffs' reply, as well as the record as a whole. For the reasons that follow, Plaintiffs' motion should be **GRANTED**.

### I. BACKGROUND

On February 26, 2014, Americaribe–Moriarity JV ("AMJV" or "Defendant"), as general contractor, entered into a written Subcontract agreement with Certified Pool Mechanics 1, Inc. ("CPM"), as subcontractor, to perform certain pool work at a project commonly known as Brickell City Centre Super Structure, located at 700 Brickell Avenue, Miami, Florida. [D.E. 52].

On April 1, 2014, International Fidelity Insurance Company and Allegheny Casualty Company (collectively, "Plaintiffs") issued a performance bond (the "Bond") in connection with the Subcontract on behalf of CPM, as principal, and Defendant, as obligee. *Id.* at ¶ 2.

On July 15, 2015, Defendant sent CPM a letter outlining various issues with CPM's work regarding the "East Block Pool Installation" and formally notified CPM of its default pursuant to Paragraph 11.2(a) of the Subcontract. [D.E. 52–4]. Defendant further informed CPM that it had three working days to cure the default. *See id.* However, on August 17, 2015, Defendant sent a letter to both CPM and Plaintiffs to advise Plaintiffs of CPM's "serious project delay and poor performance" and to "request[ ] an immediate conference call with [Plaintiffs] to substitute CPM's scope at the East Hotel pools with an alternative subcontractor[.]" [D.E. 52–5]. In response, in a letter to Defendant dated August 20, 2015, Plaintiffs listed their availability for a conference call, informed Defendant of its attempts to "communicate with the appropriate representative of [its] principal to investigate the facts and circumstances concerning this matter," requested further information from Defendant, and warned Defendant "not to take any steps with respect to the completion of the project" without Plaintiffs' prior consent. [D.E. 52–6].

The parties, including CPM, conducted a telephone conference on September 2, 2015 to discuss CPM's performance under the Subcontract. Subsequently, Plaintiffs mailed Defendant a letter dated September 15, 2015. In that letter, Plaintiffs informed Defendant that they were in the process of reviewing the information provided by Defendant regarding CPM's default, but that the information provided was incomplete. [D.E. 52–7]. Plaintiffs also

noted that the completion date of the project had been "altered significantly from the baseline schedule" and that "the duration of [CPM's] activities [had] been significantly reduced," lending credence to CPM's argument that the schedule was impacted due to events beyond CPM's control. *Id.* As such, Plaintiffs alerted Defendant that it needed "to better understand whether the impacts to the schedule [were] the result of CPM or the result of predecessor activities over which CPM [had] no control," requested a reply and further information from Defendant, and reminded Defendant that any attempt to complete the bonded work using another subcontractor would be a violation of the Bond. *Id.* However, on September 16, 2015, Defendant obtained a proposal from a new potential subcontractor, Dillon Pools, Inc. ("Dillon Pools"), to complete the remaining scope of the Subcontract. [D.E. 52–9]. Additionally, in an email exchange dated September 17, 2015, Defendant and Dillon Pools established a "presumed starting date" of September 21, 2015. [D.E. 52–10].

In a letter dated September 21, 2015, which was addressed to both Plaintiffs and CPM, Defendant officially declared CPM in default, terminated the Subcontract, and made a demand upon Plaintiffs to perform under the performance bond, pursuant to Sections 3.2 and 3.3 of the performance bond and Paragraph 12.2(a) of the Subcontract. [D.E. 52–8]. Then, on September 22, 2015, Defendant sent Plaintiffs a letter stating that it "intend[ed] to award the subcontract to complete the remaining work ... to Dillon Pools, Inc." [D.E. 52–11]. In that same letter, Defendant asked that Plaintiffs "provide all necessary lists of material, delivery dates and pricing to Dillon Pools as enquired in their effort to complete the Pool scope of work for the project." *Id.* As of September 23, 2015, Dillon Pools "commenced performing supplementation work and on site investiga-

tions to determine corrective work required for the project ...." [D.E. 52–12].

In a letter dated September 29, 2015, Plaintiffs acknowledged receipt of Defendant's letter declaring CPM in default, requested that Defendant provide them with the information they had previously requested in order to further their investigation, reminded Defendant not to take any steps with respect to completion of the project without Plaintiffs' consent, and informed Defendant of their desire to conduct a site visit on October 1, 2015. [D.E. 52–13]. However, in a letter dated October 1, 2015, Defendant requested that Plaintiffs "immediately arrange for a contract to be prepared for execution by [Defendant] and a contractor selected with [Defendant] concurrence" as Plaintiffs were "not licensed or qualified to perform and complete the Construction Contract (§ 5.2)" and Defendant "[would] not consent for CPM to perform and complete the Construction Contract (§ 5.1)." [D.E. 52–14]. (emphasis omitted). Defendant also stated that its letter served as "AMJV's additional written notice to [Plaintiffs] demanding that [Plaintiffs] perform its obligations under [the] Bond within seven days." *Id.* In a contract dated October 1, 2015 between Defendant, as contractor, and Dillon Pools, as subcontractor, Dillon Pools agreed "to furnish all labor, material, equipment, layout, etc., necessary for the complete performance of the Swimming Pools and Spa Work not completed by Certified Pool Mechanics 1, Inc. (CPM)." [D.E. 61–5 at 8]. It was further understood as between Defendant and Dillon Pools that "[t]he subcontractor is taking over the scope of work from another Subcontractor terminated for cause." *Id.* AMJV and Dillon Pools anticipated a start date of September 28, 2015. *Id.* at 16. AMJV executed the contract between itself and Dillon Pools on January 21, 2016. *Id.* at 29. Dillon Pools executed the contract on November 4, 2015. *Id.*

## II. STANDARD

In reaching our determination of the appropriate fee award in this case, we acknowledge that in awarding attorneys' fees "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). We have the ultimate discretion when determining whether a party to a case should receive an award of fees. *See Cullens v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1492–1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness."). An award must be reasonable and must fall within the guidelines for attorneys' fee awards promulgated by the Eleventh Circuit. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299–1302 (11th Cir. 1988). It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens*, 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

In determining an appropriate attorneys' fee award, we employ the lodestar method when calculating reasonable attorneys' fees. *See City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id.* More specifically, the lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to then multiply that rate by the number of hours reasonably expended by counsel. *See, e.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Harbaugh v. Greslin*, 365 F.Supp.2d 1274, 1279 (S.D. Fla. 2005). Following the Court's calculation of reasonable attorneys' fees, "the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302. Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* at 1304 (citation omitted).

## III. ANALYSIS

The crux of this motion concerns Plaintiffs' entitlement to attorney fees. While Defendant does not challenge the hourly rates requested or the number of hours expended by Plaintiffs' counsel, Defendant argues that Plaintiffs have no legal basis— either contractually or statutorily—to an award of attorneys' fees. We address the parties' arguments in turn.

### A. *Determination of the Prevailing Party*

As a preliminary matter, Plaintiffs declare that this Court has deemed Plaintiffs to be the prevailing parties in the above-styled litigation because the Court granted Plaintiffs' motion for summary judgment. [D.E. 73–74]. Support for this conclusion is plentiful in both federal and Florida case law. "[T]he U.S. Supreme Court has held that, for a party to be 'prevailing,' there must be a 'judicially sanctioned change in the legal relationship of the parties.'" *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 101 (2d Cir. 2006) (quoting *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). Dismissals for lack of subject matter jurisdiction, or dismissals without prejudice in general, typically do not meet that test. *See id.* at 103 (citing *Citizens for a Better Environment v. Steel Co.*, 230 F.3d 923, 929–30 (7th Cir. 2000); *Szabo Food Serv. Inc. v. Canteen Corp.*, 823 F.2d 1073, 1076–77 (7th Cir. 1987) (holding that defendant was not "prevailing party" where complaint was dismissed without prejudice because "dismissal without prejudice ... does not decide the case on the merits .... The defendant remains at risk.")); *see also Keene Corp. v. Cass*, 908 F.2d 293, 298 (8th Cir. 1990) ("To be a prevailing party ... a party must succeed on some claim or significant issue in the litigation which achieves some benefit the parties sought").

Florida cases have routinely applied these same principles. The "prevailing party," for purposes of attorneys' fees, is a party that the trial court determines prevailed on significant issues in the litigation. *See Green Companies, Inc. v. Kendall Racquetball Investment, Ltd.*, 658 So.2d 1119 (Fla. 3d DCA 1995). Even when a party receives a monetary award that does not necessarily mean the party is a prevailing party in the litigation. *See Boxer Max Corp. v. Cane A. Sucre, Inc.*, 905 So.2d 916, 918 (Fla. 3d DCA 2005). But it is undeniable that, when there is a dismissal of a case without prejudice, Florida law does not confer prevailing party status on the successful movant. *See Shaw v. Schlusemeyer*, 683 So.2d 1187 (Fla. 5th DCA 1996) (denying motion for fees as prevailing party under Florida environmental statute because complaint dismissed without prejudice; "The dismissal was based on procedural grounds and not a determination of any significant issue in the case. Importantly, the instant dismissal order did not bring the litigation to an end.").

Here, Defendant makes no argument in response that Plaintiffs are the prevailing party because it indisputable based on the Court's prior Orders. On June 22, 2016, the Court denied Defendant's motion for summary judgment and ruled in favor of Plaintiffs. [D.E. 73]. Accordingly, Plaintiffs are obviously the prevailing party—in light of the substantial case law described above—and may be entitled to recoup attorneys' fees from the Defendant.

### B. *Contractual Entitlement to Attorneys' Fees and Costs*

Plaintiffs contend that the Subcontract and Section 57.105(7) of the Florida Statutes entitle Plaintiffs to attorneys' fees. It is a well settled principle that attorneys' fees "can derive only from either a statutory basis or an agreement between the parties." *Trytek v. Gale Indus., Inc.*, 3 So.3d 1194, 1198 (Fla. 2009) (citing *State Farm Fire & Cas. Co. v. Palma*, 629 So.2d 830, 832 (Fla. 1993)). Pursuant to paragraph 9.5 of the Subcontract, CPM is contractually obligated to Defendant for attorneys' fees in connection with any matters "arising out of, in connec-

tion with or resulting from the performance of Work under this Subcontract":

> Indemnification. To the fullest extent permitted by law, **Subcontractor shall indemnify and hold harmless the Contractor**, its officers, directors or employees and the Owner, from and against all claims, damage, losses and expenses (***including, but not limited to attorneys' fees***) *arising out of, in connection with or resulting from the performance of Work under this Subcontract* Agreement

[D.E. 1–4] (Emphasis added).

■■ Florida does not allow contracts to have one-sided fee recovery provisions and numerous courts have reached the same conclusion. *See Mihalyi v. LaSalle Bank, N.A.*, 162 So.3d 113, 115 (Fla. 4th DCA 2014) (citing *Indem. Ins. Co. of N. Am. v. Chambers*, 732 So.2d 1141, 1143 (Fla. 4th DCA 1999)); *Florida Hurricane Prot. & Awning, Inc. v. Pastina*, 43 So.3d 893, 895 (Fla. 4th DCA 2010) ("The statute renders 'bilateral a unilateral contractual clause for prevailing party attorney's fees.' ") (citation omitted); *Holiday Square Owners Ass'n, Inc. v. Tsetsenis*, 820 So.2d 450, 453 (Fla. 5th DCA 2002) ("This section makes a unilateral contract clause for prevailing party attorney's fees bilateral in effect.") (citation omitted). The basis for Florida courts holding one-sided fee recovery provisions as bilateral stems from Section 57.105(7), Florida Statutes (2008):

> If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the ***court may also allow reasonable attorney's fees to the other party when that party prevails in any action***, whether as plaintiff or defendant, with respect to the contract.

Fla. Stat. Ann. § 57.105 (emphasis added). Because of the statutory language, Plaintiff argues that via the basic principles of suretyship law, a surety's liability is coextensive with that of its principal and that Plaintiffs are entitled to "step into the shoes" of CPM and recover its attorneys' fees from Defendant pursuant to the Subcontract.

Plaintiff also argues that the Bond provides an additional basis for attorneys' fees. More specifically, in addition to the Bond's incorporation of the attorneys' fees provision of the Subcontract, the Bond contains—at paragraph 7—separate language providing Plaintiffs with the contractual right to recover attorneys' fees from the Defendant:

> If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, *the Surety is obligated, without duplication, for*:
>
> * * *
>
> .2 *additional legal*, design professional and delay *costs resulting from the Contractor's Default*, and resulting from the actions or failure to act of the Surety under Section 5

[D.E. 1–5] (Emphasis added). Therefore, the Bond purportedly provides another basis for the recovery of attorneys' fees.

In response, Defendant raises numerous arguments that there is no contractual entitlement to attorneys' fees but—as set forth below—none are persuasive. First, Defendant argues that Plaintiffs must be a party to the underlying Subcontract with the Defendant. Because Plaintiffs are not named nor referenced in the applicable attorneys' fee provision of the Subcontract, Plaintiffs cannot purportedly recover attorneys' fees. But, Defendant's authority

on this subject is misplaced. Defendant first relies on *Snedeker v. Lighthouse Realty Grp., Inc.*, 773 So.2d 109, 110 (Fla. 5th DCA 2000) for support but this three paragraph Order only provides that a particular party that did not qualify as a seller, buyer, or broker could not recover under the applicable attorneys' fee provision that applied specifically to those aforementioned categories. *See id.* Contrary to the Defendant's contention, the case does not stand for the proposition that a party must be named in a contract to collect attorneys' fees.

Defendant then moves to several other cases that suggest Plaintiffs must be a party to the contract in order to gain the benefit of an attorney fee provision. For example, Defendant relies on *Florida Cmty. Bank, N.A. v. Red Rd. Residential, LLC*, 197 So.3d 1112, 1115 (Fla. 3rd DCA 2016) and the court's holding that "[o]nly the parties to a contract may avail themselves of section 57.105(7)'s entitlement to attorney's fees." *Id.* at 116. But, Defendant's argument is again misplaced. Plaintiffs' main contention is that the basic principles of suretyship law allow Plaintiffs to step into the shoes of CPM, thereby making them a party to the Subcontract. *See Am. Home Assur. Co. v. Larkin Gen. Hosp., Ltd.*, 593 So.2d 195, 198 (Fla. 1992) ("The liability of a surety is coextensive with that of the principal.").

The Supreme Court of Florida thoughtfully explained the basic tenets of a surety's relationship with a principal nearly three decades ago:

The narrow view that a surety acts only for the contractor (principal) is inconsistent with the purpose of a surety bond: to protect the obligees. *A surety who performs or pays on behalf of a obligee steps into the shoes of the obligee to the extent of performance or payment.* *Transamerica Ins. Co. v. Barnett Bank of Marion Cty., N.A.*, 540 So.2d 113, 116 (Fla. 1989) (emphasis added). Because of Plaintiffs' relationship with the principal, Plaintiffs acquired all the rights of the obligee as a party to the Subcontract and Defendant's argument is meritless. *See Gencor Indus., Inc. v. Fireman's Fund Ins. Co.*, 988 So.2d 1206, 1210 (Fla. 5th DCA 2008) ("It is settled that, as a general rule, an insurer steps into the shoes of the insured and 'acquires no greater or lesser rights than those of the insured.'"). Alternatively, the Subcontract was incorporated by reference into the Bond—a contract to which Plaintiffs are undisputedly a party. Accordingly, Defendant's argument fails.

Second, Defendant argues that the attorney fee provision of the Subcontract upon which Plaintiffs reply upon is not a unilateral attorneys' fees provision but an indemnity clause that bars—as an apparent per se rule—both CPM and Plaintiffs from seeking attorneys' fees from Defendant.[1] However, Florida courts have ruled otherwise and granted attorney fees on the basis of an indemnity clause. *See Merchants Bonding Co. (Mut.) v. City of Melbourne*, 832 So.2d 184, 185 (Fla. 5th DCA 2002) ("Section 57.105(2) renders bilateral, a unilateral contract clause for prevailing party attorney's fees, such as the one quoted above."); *Ajax Paving Indus., Inc. v. Hardaway Co.*, 824 So.2d 1026, 1029 (Fla. 2nd DCA 2002); *ADF Int'l, Inc. v. Baker Mellon Stuart Const., Inc.*, 2001 WL 34402607, at *1 (M.D. Fla. Apr. 6, 2001) "[Defendant] argues that the indemnity clause in the subcontract applies only to third party claims and is inapplicable to a dispute between [Defendant] and [Plain-

---

1. Rather than provide a more substantive analysis of *why* an indemnity agreement bars the recovery of attorney fees, Plaintiff simply made the assertion and pivoted directly into citing case law without providing additional support for the argument.

tiff]. The Court rejects this argument."). Neither the statutory language in Section 57.105 nor the Subcontract makes a distinction between a unilateral attorneys' fee provision and an indemnity clause.

As support, Defendant relies principally—but unpersuasively—on *Pat Martens Custom Homes Co. v. Landsteiner*, 711 So.2d 1338, 1339 (Fla. 2nd DCA 1998). In *Landsteiner*, the court reasoned that the language contained in the indemnity provision limited the entitlement of attorneys' fees to claims related to injuries to *persons or property*—not that the recovery was limited to the owner. Because the contractor's claim against the owner was based on breach of contract—and not personal injury—the contractor could not rely on the indemnity provision for entitlement.

For similar reasons, Defendant's second case—*Gibbs Const. Co. v. S. L. Page Corp.*, 755 So.2d 787, 790 (Fla. 2nd DCA 2000)—is also unpersuasive on the point that indemnity provisions bar sureties from attorneys' fees. As the court stated in *Gibbs*, the indemnity provision "was inapplicable because it only involved claims for 'accidents to persons or property occasioned by the Subcontractor.' The present case involved neither an accident to a person nor an accident to property." *Id.* Consequently, Defendant fails to cite a single case that stands for the proposition that indemnity provisions bar Plaintiffs from seeking attorneys' fees.

Third, Defendant argues that a dispositive case—*McCarthy Bros. Co. v. Tilbury Const., Inc.*, 849 So.2d 7 (Fla. 1st DCA 2003)—is controlling because it purportedly holds that a surety is not entitled to the benefit of a contractual fee provision between a principal and obligee. More specifically, *Tilbury* allegedly stands as another bar to Plaintiffs' contention that the incorporation of the Subcontract into the Bond allows a surety to collect attorneys' fees. But, *Tilbury* is distinguishable on several

grounds. The court noted that the contract did not "contemplate attorney's fees for any [other] entity" and there was "no need to include other parties . . . ." *Id.* at 11. *Tilbury* also relies principally on the application of Sections 627.428 and 627.756, neither of which is at issue here. Defendant is correct that *Tilbury* references Section 57.105(6) but it does so without addressing the suretyship relationship where Plaintiffs "step into the shoes" of CPM as it relates to rights and claims against Defendant. Therefore, Defendant's reliance on dicta and the *one* sentence that "parties not in privity cannot benefit from the reciprocity provisions of section 57.105(6)" is not persuasive because Plaintiffs are in privity with CPM because of their surety-principal relationship as described above and the incorporation of the Subcontract into the Bond. *See Tilbury*, 849 So.2d at 11.

A more persuasive case to the facts presented is *Federal Ins. Co. v. Exel of Orlando, Inc.*, 685 So.2d 896, 898 (Fla. 5th DCA 1996). In *Exel*, a surety recovered attorneys' fees after successfully defending a lawsuit brought by a contractor and subcontractor trying to enforce the surety's Bond. That award was approved because the surety stepped into its principal's shoes. Notably, the contractual provision at issue in *Exel* included very similar language as found here which calls for attorney fees "arising out of, in connection with or resulting from the performance of the Work under this Subcontract." [D.E. 1–4]; *Cf. Exel*, 685 So.2d at 898 ("The contract between appellee and Parrish provided for attorney's fees for any litigation 'involving, arising out of or related to this contract.' Appellant stepped into Parrish's shoes and is entitled to recover attorney's fees.").

Defendant takes issue with *Exel* because the case is (1) older, (2) has not been followed or reported in trial or appellate opinions, and (3) also relates to different

contractual provisions. But, Defendant's arguments are unpersuasive. *Exel* remains good law, with no history of negative treatment and contains a similar contractual provision to the one in dispute here. When coupled with *Gibbs*—as discussed further below—the Court finds that the weight of authority favors Plaintiffs.

A similar case reached the same result. In *Gibbs*, a School Board sued its prime contractor, Gibbs, for breach of contract and warranty.[2] *Gibbs*, 755 So.2d at 787. The School Board also sued Gibbs and its *performance bond surety*, Fidelity, for breach of the performance bond. Gibbs and Fidelity prevailed and were awarded their attorneys' fees. The School Board then appealed the award of attorneys' fees. The general contract between the Board and Gibbs provided for attorneys' fees on the basis that "if [the] Board is required to institute or defend any legal proceedings in connection with this Contract due to Contractor's [Gibbs'] default, Contractor agrees" to pay the Board's attorney's fees. *Id.* at 789–90. In affirming the fee award to Gibbs and Fidelity, the state appellate court held that the "general contract, when read in *pari materia* with Fla. Stat. § 57.105(2), entitled Gibbs *and Fidelity* to their attorney's fees." *Id.* at 791 (quotation marks omitted). Accordingly, *Gibbs* and *Exel* are persuasive in finding that Plaintiffs are entitled to attorneys' fees.

As the Court briefly touched upon earlier, Plaintiffs contend that the Bond and Section 57.105(7) also entitle Plaintiffs to attorneys' fees. In response, Defendant argues that (1) Plaintiff cites no legal authorities that allow a surety to recover attorneys' fees, and (2) the Bond cannot

override the clear language of the applicable statutes on performance bond claims in Sections 627.428(1) and 627.7556(a). But, Defendant's arguments miss the mark. The Court can find neither a case nor statute that prohibits a surety from contracting for a recovery of attorneys' fees. The Bond also specifically enumerates the damages recoverable—including legal costs—and Florida case law holds that sureties may recover attorneys' fees under Sections 627.428(1) and 627.7556(a). *See Nichols v. Preferred Nat. Ins. Co.*, 704 So.2d 1371, 1373 (Fla. 1997) ("[T]he plain language of section 627.428 states that reasonable attorney's fees and costs are to be awarded against an insurer upon rendition of a judgment against the insurer in favor of the insured or beneficiary. Additionally, the term 'insurer' is clearly defined under the Florida Insurance Code to include a 'surety.'") (citing Fla. Stat. Ann. § 624.03); *see also Snow v. Jim Rathman Chevrolet, Inc.*, 39 So.3d 368, 371 (Fla. 5th DCA 2010) ("Although *Nichols* involved guardianship bonds, for purposes of our analysis, we do not see any notable difference between sureties that issue guardianship bonds and those, like Fidelity, that issue motor vehicle dealer bonds. Applying the *Nichols* analysis, we conclude that Fidelity is a surety that fits the definition of insurer for purposes of applying the provisions of section 627.428.").

Because all of Defendant's arguments are unpersuasive, there is no basis to deny Plaintiffs' contractual entitlement to attorneys' fees. The case law and statutory text reach the same conclusion. Accordingly, Plaintiffs are contractually entitled to attorneys' fees against the Defendant.[3]

---

**2.** Defendant offers no rebuttal to the application of *Gibbs* except on the basis that the contractual provisions were purportedly different. But, Defendant fails to articulate reasons as to why *Gibbs* does not control the award of fees in the principal-surety relationship.

**3.** As an alternative basis for attorneys' fees, Plaintiffs argue that there is a more limited statutory entitlement—as opposed to a contractual entitlement—that applies in the amount of $73,766.00, the amount due since the filing of Plaintiffs' settlement proposal on

## C. *Reasonable Hourly Rates*

When making a lodestar calculation, the Court must first determine the reasonable hourly rate owed to counsel. This Circuit defines the reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman*, 836 F.2d at 1299. Several well established factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.*[4] The party who applies for attorney's fees must submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman*, 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Nevertheless, the Court remains an expert on the issue of hourly rates in its community, and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

Here, the Defendant does not articulate a single argument in its Opposition against Plaintiffs' proposed fee rates. According to the fee agreement between Plaintiffs and its counsel, Plaintiffs were obligated pay the following hourly rates: (1) Edward Etcheverry (Senior Partner of 26 years)—$250, (2) Guy W. Harrison (Senior Partner of 34 years)—$250, (3) Jeffrey S. Geller (Junior Partner of 21 years)—$240, (4) Joyce Cruz Albert (Associate of 12 years)—$225, and (5) miscellaneous paralegals—$75. These rates, when combined with the number of hours expended, equal a total amount of $154,536 in attorneys' fees.

Here, all of Plaintiffs' attorneys have at least twelve years of experience and specialize their practice on the construction industry—specifically the representation of construction sureties. Based on the Court's expertise and the rates of attorneys in the local market, Plaintiffs' requested rates are reasonable for lawyers and paralegals in this District. *See, e.g., Golf Clubs Away, LLC v. Hostway Corp.*, 2012 WL 2912709, at *3 (S.D. Fla. July 16, 2012) (awarding reasonable attorney fees of $500/hour for partners, $350/hour for associates, and $125/hour for paralegals); *Caballero v. Sum Yum Gai, Inc.*, 2011 WL 1675001, at *2 (S.D. Fla. May 3, 2011) (awarding attorney fees ranging from $150 to $350 an hour, depending on experience); *ABC*

---

April 1, 2016. Because the Court has already found that Plaintiffs are contractually entitled to attorney fees as described above, the Court need not explore the merits of the statutory entitlement claim nor the parties' arguments concerning Plaintiffs' settlement proposal.

**4.** The 12 *Johnson* factors are as follows:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.
*Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717–719 (5th Cir. 1974).

*Charters, Inc. v. Bronson*, 2010 WL 1332715 (S.D. Fla. Mar. 16, 2010) (finding $125 to be reasonable for paralegals and law clerks); *CC–Aventura, Inc. v. Weitz Co., LLC*, 2008 WL 276057, at *2 (S.D. Fla. Jan. 31, 2008) (reducing an eighth year associate's billing rate from $475 to $400 and reducing a first year associate's billing rate from $325 to $200). Accordingly, having considered the relevant *Johnson* factors, the Court finds that Plaintiff's proposed rates are reasonable.[5]

### D. Hours Reasonably Expended

 The second component of the lodestar method requires the Court to determine the amount of hours reasonably expended by Plaintiff's counsel. This analysis requires a court to exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*" *ACLU of Georgia*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). Thus, the "district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

 This calculation emphasizes that "counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* The burden lies with the applicant for attorney's fees to submit as evidence detailed documentation of his time spent to guide the Court's determination of the amount of hours to properly and reasonably award. *See ACLU of Georgia*, 168 F.3d at 428. This evidence must be specific, detailed, and presented in an organized fashion. *See Norman*, 836 F.2d at 1303. The party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded from the lodestar calculation. *See ACLU of Georgia*, 168 F.3d at 428. Ultimately, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F.2d at 1306.

Here, Defendant makes no arguments objecting to the number of hours reasonably expended in its Opposition. According to Plaintiffs' detailed time records and summaries Plaintiffs submitted in support of their application for attorneys' fees, the Court finds that the hours were all reasonably spent, particularly in light of the favorable result obtained for the Plaintiffs. The invoices describe typical research, writing, and preparation tasks and the attorneys did not appear to expend a disproportionate amount of time to inflate the total amount of fees. Throughout this litigation, counsel for Plaintiffs exerted substantial efforts to pursue the claims of their clients. Because of the factual complexities and novel legal questions, Plaintiffs' counsel made significant time commitments to reach a favorable result. Accordingly, the Court finds that after a careful review of the itemized invoices—including each legal task and its corresponding time entry—a lodestar adjustment is not warranted.

### E. Final Calculations

With these considerations in mind, the Court finds that Plaintiffs' proposed hourly rates and the number of hours expended are reasonable. Accordingly, the undersigned recommends that that the request-

---

**5.** Noticeably, in Plaintiffs' certificate of good faith, Plaintiffs certify that Defendant does not dispute the rates of any of Plaintiffs' attorneys and paralegals—a position consistent with Defendant's omission of any challenge to Plaintiffs proposed fees.

ed fee amount of $154,536.00 is granted in full.

### III. CONCLUSION

Based on a thorough review of Plaintiffs' Motion [D.E. 81], it is hereby **RECOMMENDED** as follows:

1. Plaintiffs' Verified Memorandum To Tax Attorneys' Fees is **GRANTED**.

2. Plaintiffs should recover from Defendant $154,536.00 in attorney fees.

3. The Court should enter a fee judgment, pursuant to Fed. R. Civ. P. 58, for that amount.

3. Pursuant to S.D.Fla.Mag.J.R.4(b), the parties have fourteen days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of any finding in this Report and Recommendation and bar the parties from attacking on appeal the findings contained herein. *See R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 13th day of October, 2016.